Statement.

### Richmond.

### GIBNEY & COMPANY V. ARLINGTON BREWING COMPANY.

#### March 9, 1911.

1. CONTRACTS—*Offer and Acceptance—Identity of Terms.*—An acceptance to be effectual must be identical with the offer and unconditional. An offer to buy goods of designated grade, to be shipped as ordered and fixing no time of payment is not accepted by agreeing to furnish goods of a different grade, limiting the time for shipment and fixing a definite time for payment. There are three material differences between the offer and the so-called acceptance.

2. CONTRACTS—*Correspondence—Identity of Terms.*—A contract by correspondence is not complete until there is upon the face of the correspondence a clear accession on both sides to one and the same set of terms.

3. CONTRACTS—*Failure to Accept Offer—Acceptance and Payment for Part of Goods Shipped as Under Contract.*—An offer to purchase 5,000 bushels of malt of a specified quality—1,500 bushels to be shipped at once and the residue as ordered—not having been accepted in such manner as to create a binding contract, the acceptance of 1,500 bushels of an inferior grade sent without authority and the payment therefor in order to avoid litigation, imposed no obligation on the offerer who was acting in good faith to order or accept the remaining 3,500 bushels.

Error to a judgment of the Circuit Court of Alexandria county in an action of assumpsit. Judgment for the defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*J. K. M. Norton,* for the plaintiffs in error.

*Moore, Barbour & Keith, L. A. Bailey* and *Moncure, Tebbs & Gaines,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

For brevity the plaintiff in error and the defendant in error will be spoken of herein as appellant and appellee.

The record shows that in March, 1908, the appellee company commenced purchasing malt from the appellant company.  Between that time and May 28, 1908, several carloads had been ordered and received by the appellee from the appellant.  Serious objection had been made by the appellee to the quality of each of these carloads of malt, except as to the last carload received by the appellee prior to May 28, 1908.  The last carload mentioned was satisfactory and no complaint was made of it.  As to each of the other shipments mentioned, protest had been made, both orally and by letters, that the malt was not clean and otherwise free from objection.  On the 28th of May, 1908, the appellee gave the appellant's salesman an order by telephone for five thousand bushels of malt at ninety-one cents per bushel, to be delivered at Rosslyn; one car of about fifteen hundred bushels to be shipped at once, and the remaining thirty-five hundred bushels to be shipped as ordered, stipulating that the malt should be of the same quality as that of the last car shipped, which had been found to be of the requisite quality.  This oral order was on the same day confirmed by a letter from the appellee setting forth its terms, as follows:

"Dear Sir:  We hereby wish to confirm the order given you by telephone this P. M. for 5,000 bus. of malt at 91 cts. per bus., delivered by the Penn. R. R. to Rosslyn, Va., one car, or about 1,500 bus., to be shipped at once, and the remaining 3,500 bus. to be shipped as ordered.  The above malt is to be the same as the last car shipped us."

This written order from the appellee was replied to by the appellant the next day, May 29, 1908, as follows:

"Dear Sirs:  We are in receipt of your letter confirm-

ing order to Mr. Marr over the telephone yesterday, viz: 5,000 bushels of malt at 91 cts. per bushel, at Rosslyn, Va., via Pennsylvania Railroad. Terms: 30 days. Same malt as we have been delivering you. One car (1,500 bushels) to be shipped at once, balance as may be ordered up to Nov. 1st, 1908. We will order the car forward at once."

This letter embodied essentially different terms from the propositions contained in the written order sent by the appellee, and was treated by it as a rejection of its offer and the submission of a counter proposition, to which no reply was made. Without awaiting an acceptance of its modified offer, appellant shipped a carload of malt to the appellee, which arrived at Rosslyn two weeks later. The appellee had this car unloaded, and found the quality of the malt not fit for its use. Shortly thereafter the salesman of the appellant company called on the appellee company and sought further orders for shipment on account of the alleged order from it. This salesman was then informed by the appellee that it had lost confidence in the appellant, owing to the inferior quality of malt repeatedly shipped by appellant, and that under no circumstances would any further orders be given appellant by appellee. The appellee heard nothing further from the appellant until August 4, 1908. Appellee delayed paying for the carload of malt that had been shipped until August 3, when it paid the invoice price by check. On the day following the receipt of this check, the price of malt having in the meantime gone down, the appellant wrote requesting a shipping order for car of malt to apply against contract. These requests for orders were repeated by letter, at intervals, until November 2, appellee making no reply to any of them until November 4, when it wrote saying that no contract existed between it and the appellant for the shipment of malt.

In March, 1909, this action of assumpsit was brought by

the appellant to recover of the appellee $612.00, the alleged difference between the alleged, contract price and the market price on November 1, 1908, by which date the malt should, as claimed, have been ordered and shipped. The declaration contains the common counts in assumpsit, and a count setting forth the order of May 28, 1908, and the alleged acceptance of that order the following day as the contract relied on in support of the demand made.

It is clear that the two letters relied on do not constitute a contract between the parties. The order of May 28, 1908, expressly provided that the malt to be shipped should be in quality the same as that contained in the last car shipped, which was satisfactory. In view of the dissatisfaction that had existed and had been repeatedly expressed in regard to the inferior quality of the malt sent by, the appellant, this was a vital condition of the order. The reply or so-called acceptance provides for shipping the "same malt as we have been delivering you," thus leaving the appellant at liberty to send the same quality of inferior malt theretofore sent. The order as given did not specify when payment should be made; the so-called acceptance provided that payment should be made in thirty days. The order of appellee provided that the remaining thirty-five hundred bushels was to be shipped as ordered; the so-called acceptance of the order limited the time in which it was to be shipped to November 1, 1908.

It thus appears that the appellant incorporated into his so-called acceptance three material alterations of the terms of the appellee's order. Appellee, as already seen, treated this letter as a rejection of its offer to purchase malt, and made no reply to it. There was certainly no meeting of minds between the appellant and the appellee with respect to the terms upon which the latter would purchase five thousand bushels of malt from the former.

In 9 Cyc., p. 265, the law is stated as follows: "The

offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters, which it may please him to insert in and make a part thereof, and the acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand." At pages 267-8 it is said: "An acceptance to be effectual must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the offer as to time of performance, place of performance. price, quantity, quality, &c."

*In Virginia Hot Springs Co.* v. *Harrison,* 93 Va. 567, 25 S. E. 888, this court, quoting from Chitty on Contracts, says:. "When an agreement is sought to be established by means of letters, such letters will not constitute an agreement, unless the answer be a simple acceptance of the proposal without the introduction of any new term. . And again, if the original offer leave anything to be settled by future arrangement, it is merely a proposal to enter into an agreement. . . . The agreement is not complete until there is upon the face of the correspondence a clear accession on both sides to one and the same set of terms."

In the light of these authorities, it is plain that the letters relied on did not constitute an agreement between the parties. The appellee was therefore under no contract obligation to take from the appellant five thousand bushels of malt; and because it chose afterwards, in order to avoid any litigation with appellant on that score, as shown by the evidence, to pay for fifteen hundred bushels

16

of inferior malt that had been sent without authority, it thereby incurred no obligation to order thirty-five hundred additional bushels that it had never agreed to take.

That the appellee was acting in good faith, and not denying liability under the alleged contract because the price of malt subsequently went down, is shown by the fact that during the thirty days immediately following its order of May 28, 1908, instead of going down, the price of malt went up, and during this thirty days appellee bought nearly five thousand bushels of malt from other parties at $1.20 per bushel; and this in the face of the fact, according to appellant's contention, that appellee was under a binding contract obligation to take from it the same quantity and the same quality of malt at ninety-one cents per bushel. This shows that appellee's denial of any contract on its part to take malt from appellant was not an afterthought because malt had gone down.

The evidence shows that, after the repudiation by the appellee, in June, of any obligation upon its part to give the appellant any further orders for malt, the appellant was silent until August, during which time malt was above the alleged stipulated price. It was not until malt had fallen below ninety-one cents that appellant asserted its reliance upon the letters mentioned as constituting a contract between itself and the appellee.

The conclusion arrived at by the jury, that appellant was not entitled to recover, was inevitable. Under the facts and circumstances disclosed by the record, no other result could have been properly reached. The judgment of the circuit court sustaining the verdict must, therefore, be affirmed.

*Affirmed.*