# Richmond.

## James River Lumber Company, Inc., v. Smith Brothers.

### March 15, 1923.

1. SALES—*Breach of Contract by Seller—Inspection and Shipping Directions—Instructions—Case at Bar.*—In the instant case, an action by sellers for breach of contract by purchaser, defendant asked for an instruction to the effect that the contracts sued on provided that the lumber contracted for should be delivered by the plaintiffs in ninety days from their dates, and if the jury believed from the evidence that plaintiffs failed to deliver the lumber, or any part thereof, within ninety days from the dates of the contracts, such failure was a breach of the contracts by the plaintiffs, and they should find for the defendant, unless they further believed that the defendant waived such breach.

   *Held:* That there was no error in refusing this instruction, because it failed to give adequate recognition to the undisputed fact that delivery of the lumber was to be preceded by inspection and shipping instructions furnished by the defendant, and moreover the question of plaintiffs' breach of contract was sufficiently covered by another instruction given by the court.

2. SALES—*Breach of Contract by Seller—Inspection and Shipping Directions—Instructions—Case at Bar.*—The qualification in the instruction set out in the preceding syllabus, rendering it inoperative if the jury believed "that the defendant waived the breach," would naturally be construed to refer to the time limit of ninety days. The defendant had the right to waive the time limit, in so far as that provision in the contract was intended for its benefit, but could not waive its own obligation to furnish the shipping instructions essential to a completed delivery by the plaintiff.

3. SALES—*Breach of Contract by Buyer—Performance by Sellers—Instructions—Case at Bar.*—In the instant case, an action by seller of lumber for breach of contract by purchaser, it appeared that the purchaser was to inspect the lumber and give shipping directions. Defendant asked for an instruction, which was refused, to the effect that if the lumber tendered by the plaintiffs to the defendant was not in accordance with the terms of the contract, such tender would not be a performance of the contract, even in part, and the plaintiffs could not require the defendant to accept it. There was little evidence

to justify the giving of this instruction, because there was nothing to show that the defendant ever offered or made any attempt to inspect the lumber.

*Held:* If it be conceded that defendant was entitled to some such instruction, there was no reversible error in refusing this one, because the instructions given told the jury in effect that before they could find for the plaintiffs, they must believe that there had been a substantial compliance with the contract on their part.

4. Sales—*Breach of Contract by Buyer—Measure of Damages—Market Price at Time and Place of Delivery—Extension of Time for Delivery.*—Undoubtedly the general rule is that the measure of damage for the breach of a contract of sale of personal property by the buyer is the difference between the contract price and the market price at the time and place of delivery; but this does not mean that the time of delivery fixed in the original contract may not be extended by consent of the parties, and such consent may be shown, either by proof of an express contract, or by conduct and acquiescence.

5. Sales—*Breach of Contract by Buyer—Measure of Damages—Market Price at Time of Delivery or Time of Suit—Waiver of Time Limit by Buyer—Buyer Responsible for Delay in Delivery—Optional Remedies by Seller.*—In an action for a breach of a contract of sale by the buyer, where the buyer waives the time limit for delivery stated in the contract, or is solely responsible for the delay, the general rule that the measure of damages for a breach of contract of sale is the difference between the contract price and the market price at the time and place of delivery does not apply, and in such case the seller, until notified that the buyer proposes to breach the contract in some more vital way, has a right to hold the goods subject to the order of the defendant, and when so notified the seller has the option of treating the goods as the property of the buyer and suing him for the whole of the contract price, or of retaining the goods as his own and suing for the difference between the contract price and the market price at the time of bringing the suit. But the seller's option must be exercised in good faith and with reasonable promptness after notice that the buyer does not intend to take the goods.

6. Sales—*Action for Breach of Contract by Buyer—Reliance by Buyer on Breach by Seller—Case at Bar.*—In the instant case, an action for breach of contract of sale of lumber by the buyer, the defendant relied on the alleged refusal of the seller to perform its part of the contract, relying upon a letter from defendant to plaintiffs, which said, "Please let us know how much more four by four oak you have to apply on order No. 33376," and to which interrogation plaintiffs made no reply; but this letter was a reply to one from plaintiffs to defendant telling it in effect that all the lumber was ready. The inquiry, therefore, in the letter was wholly unnecessary, and was an idle re-

quest for information which the buyer already had, and with this letter out of the way, there was nothing in the evidence to show that the defendant ever was denied any rights which it had under the contract.

7. SALES—*Action for Breach of Contract by Buyer—Measure of Damages—Delay in Bringing Suit—Case at Bar.*—In the instant case, an action for a breach of a contract of sale of lumber by the buyer, plaintiffs held the lumber in readiness for compliance with the contract up to the time suit was brought, treating the lumber as having been sold to the defendant. There was nothing in the evidence to show that defendant in any way notified plaintiffs that it would not take all of the lumber, and defendant never asserted that plaintiffs had breached the contract until suit was instituted.

*Held:* That, while plaintiffs could not wait indefinitely before determining to accept the breach and sue for damages, it was not unreasonable in the instant case to wait from February until April before bringing suit.

Error to a judgment of the Corporation Court of the city of Lynchburg, in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John L. Lee, F. W. Whitaker,* and *C. M. Gregory,* for the plaintiffs in error.

*Edmunds & Hamner,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a writ of error to a judgment in favor of Smith Brothers against the James River Lumber Company for an alleged breach of contract for sale of lumber by the former to the latter. A somewhat detailed statement of the evidence is essential to a proper disposition of the questions involved.

On April 8, 1920, the James River Lumber Company, a corporation, by two separate informal contracts in writing, purchased of Allen V. and Charles L. Smith, partners, trading as Smith Brothers, two lots of lumber, as follows:

(a) "90,000 feet four by four mill run oak, eight, ten and twelve feet, and to be mill manufactured and dry stock and delivered in ninety days. Price $50.00 per thousand feet f. o. b. cars Bixby, N. C." The terms for payment were "net cash when loaded."

(b) "75,000 feet four by four mill run pine, ten and twelve feet long, cut standard widths and to be *shipping* dry when loaded and to be shipped in ninety days. Price, $53.00 per thousand feet, f. o. b. cars Bixby, N. C." The terms for payment were "net cash when loaded."

It did not so appear in the written memoranda evidencing the contracts, but was understood, and was proved without objection as a part of the contracts, that the lumber company would send an inspector to Bixby, N. C., to inspect the lumber and to give shipping instructions before it was shipped; and, further, that Smith Brothers were to order cars for shipment of the lumber, but could only do this in accordance with shipping instructions given them by the lumber company.

On June 26, 1920, J. R. Wray, an inspector employed by the lumber company, and also its purchasing agent, through whom it had made the two contracts in question, went to Bixby and inspected and gave shipping instructions for two cars of oak, which were at the siding in part fulfillment of the contract for the oak; and on June 29, 1920, he returned to Bixby and inspected and gave shipping instructions for a third car of such oak. All three of these cars were loaded and shipped out by Smith Brothers under instructions given by Wray.

There was at that time about 3,000 feet more of oak at the siding, but not enough for a full carload. This was afterwards hauled away by Smith Brothers to their planing mill.

There is a conflict in the evidence as to what transpired with respect to the balance of the oak at the time of the loading of the third car. One of the Smith Brothers, who was present, testified that he asked Wray when he would take up the balance of the oak, and that Wray said he would have to confer with the president of the lumber company, and made no complaint about the quantity of oak which was then at the siding. Wray, on the other hand, testified that he asked Smith about the balance of the oak and that Smith said he did not have any more oak and could not get it.

Smith testified further, that on June 29th his firm had at two of their mills, two and four miles respectively from Bixby, more than enough oak and pine lumber of the kind and quality called for to complete the contracts which they could have delivered at Bixby faster than it could be inspected; that all of this lumber had been sawed since the contracts were made on April 8th; that they were at all times thereafter ready, willing and anxious to deliver all of the lumber of both kinds which they had sold to the lumber company; and that they had held the lumber for the company and had it on hand when this suit was brought, having made no effort to sell it because they considered it sold to the company.

When Wray was at Bixby inspecting the oak, Smith Brothers had at the siding about 45,000 feet of pine which they had hauled there to apply on the contract for 75,000 feet of pine. The space at the siding was full at that time, so that no more lumber could be unloaded there from the mills until some of what was already on the yard had been shipped out.

There is a conflict of evidence as to the pine which arises in this way: Smith testified that he asked Wray, when he was there inspecting the oak, to inspect the pine at Bixby so it could be shipped out, and that Wray made no complaint about its quality but said he had no instruction from the lumber company to take up the pine, and was only instructed to take up the three cars of oak; and that Wray did not inspect the pine or take any action about it. Wray, on the other hand, testified that while he did not inspect the pine, he looked at it, saw it was stained, "black as your hat and green, and not in shipping condition," and that he wrote the lumber company about it as follows: "Smith has two cars of pine ready to load, four inches and up, ten and twelve feet long, but it is in bad condition; badly stained and not dry, and I doubt if you would want it." Wray further testified that he told Smith he had no instructions about the pine, and said nothing about its bad condition for that reason. The president of the lumber company testified that the pine at the siding was not taken up because of the letter from Wray.

The lumber company did not pay promptly for the three cars of oak. One car was paid for on July 9th, one on July 15th, and the remaining one on October 28, 1920.

The only correspondence between the parties which appears in the record is as follows: (1) July 6, 1920, a letter from Smith Brothers to the James River Lumber Company insisting on immediate payment for the three cars of oak, and adding "Your pine boards are ready to ship any time, let us know what day we can load." (2) July 9, 1920, letter from the company to Smith Brothers in reply to the above, enclosing check for the car inspected by Wray on June 29th. This letter states that the company understood Wray had given Smith Broth-

ers a draft for the other two cars, and promises to immediately send check for them if such draft was not given. (3) July 10, 1920, letter from Smith Brothers to the company, in reply to last above, saying no draft had been given them for the two cars, and insisting on remittance by return mail. This letter added: "We are awaiting your orders to load out the balance of your oak and pine." (4) July 15, 1920, letter from the company to Smith Brothers, in reply to last above, enclosing draft for one of the two cars, and promising to pay for the other by the end of the week. This letter added: "Please let us know how much more four by four oak you have to apply on order No. 33376" (referring to the contract for oak). (5) October 13, 1920, letter from Smith Brothers to the company saying: "Please let us have your check for the car of lumber yet due, without further delay." (6) October 28, 1920, letter from the company to Smith Brothers enclosing check for the third car of oak lumber.

Smith testified that his firm wrote several times to the company asking it to take up the balance of the lumber, but got no reply. The president of the company denied this, and testified that the only letter the company received in regard to the lumber after October 13th was a letter from Smith Brothers' attorney. This is shown to have been a letter from the attorney *requesting payment for the balance of the lumber.* What reply, if any, was made to the attorney does not appear, nor does it appear that anything further passed between the parties until the 25th of April, 1921, when this suit was brought. Smith testified, however, and was not contradicted, that the company never at any time prior to the bringing of this suit notified his firm that it would not take the lumber called for in the contract.

There was a rapid decline in the market price of oak

and pine lumber after the expiration of the ninety days provided for in the contract, that is to say, after July 7, 1920, but the evidence fails to disclose what the market price was at any subsequent date except the date on which the suit was brought. The judgment complained of was for $2,438.84, specifically stated in the verdict as being "the difference between the contract price of said lumber and the market value at the time of the bringing of this suit." This language quoted from the verdict is substantially the same as that which was used by the court in its instruction upon the measure of damage.

[1, 2] The first assignment of error is based upon the action of the court in refusing to give instructions 1 and 2 asked for by the defendant. Instruction 1 was as follows:

"The court instructs the jury that the contract sued on, dated April 8, 1920, provides that the lumber contracted for should be delivered by the plaintiffs in ninety days from their dates, and if the jury believe from the evidence that the plaintiff failed to deliver said lumber, or any part thereof, within ninety days from the dates of said contracts, such failure was a breach of the contracts by the plaintiffs, and they will find for the defendant, unless the jury further believe from the evidence that the defendant waived such breach."

There was no error in refusing this instruction, because it fails to give adequate recognition to the undisputed fact that delivery of the lumber was to be preceded by inspection and shipping instructions furnished by the defendant. The delivery required was a delivery f. o. b. cars at Bixby, which meant that the cars had to be ordered and loaded by the plaintiff, and this could not be done until after shipping instructions had been given. The qualification in the instruction rendering it

inoperative if the jury believed "that the defendant waived the breach," would naturally have been construed to refer to the time limit of ninety days. The defendant had the right to waive the time limit in so far as that provision in the contract was intended for its benefit, but could not waive its own obligation to furnish the shipping instructions essential to a completed delivery by the plaintiff. The question of the plaintiffs' breach of contract was sufficiently covered by an instruction given by the court and hereinafter set out.

[3] Instruction No. 2, asked for by the defendant and refused, was as follows: ·

"The court further instructs the jury that if they believe from the evidence that the pine lumber tendered by the plaintiffs to the defendant under said contract, and within ninety days from its date, was not in accordance with the terms of said contract, such tender would not be a performance of said contract, even in part, and the plaintiffs could not require the defendant to accept it."

There was very little evidence to justify the giving of such an instruction as this, because there was nothing to show that the defendant ever offered or made any attempt to inspect the pine lumber, but if it be conceded that the defendant was entitled to some such instruction, there was no reversible error in refusing this one, because the instructions which the court did give told the jury in effect that before they could find for the plaintiffs they must believe from the evidence that there had been a substantial compliance with the contract on their part. The instructions as given were as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiffs cut the lumber men-

tioned in the contracts of April 8, 1920, within ninety day___ from date thereof and was able and ready to ship the kind and quality of lumber called for in said contracts, upon inspection and shipping instructions from the defendant, and that the defendant fail___ and refused to have same inspected or give shipping instructions for the balance of said lumber, then the defendant breached his contract and is liable for the difference between the market price of said lumber and the contract price at the bringing of this suit.

"The court instructs the jury that if they believe from the evidence that the plaintiffs did not have the lumber sawed according to specifications as called for in the contracts and told Wray so when he loaded the first three cars, then the plaintiffs breached said contract and they must find for the defendant.

"The burden of proof is upon the plaintiffs to establish his case to the satisfaction of the jury except as to the plea of set off in which either case the burden is on the defendant.

"The court instructs the jury that if they believe from the evidence that the plaintiffs could not and did not deliver the oak lumber called for in the contract, and so informed the defendant's agent, then the plaintiff is liable to the defendant for such damages as it has proven it sustained."

The remaining assignment of error challenges the action of the court in giving the above instruction upon the measure of damage, the contention being that plaintiffs' recovery ought to have been limited to the difference between the market price of the lumber at the expiration of the ninety days provided for in the contract and the price named therein, instead of the difference between the market price and contract price at the time of bringing the suit.

[4] Undoubtedly the general rule is that the measure of damage for the breach of a contract of sale of personal property by the buyer is the difference between the contract price and the market price at the time and place of delivery; but this does not mean that the time of delivery fixed in the original contract may not be extended by consent of the parties, and such consent may be shown either by proof of an express contract, or by conduct and acquiescence. As said by this court in *Smith* v. *Snyder*, 77 Va. 432: "The rule, and one founded in justice, is in such cases, that where the time for performing a contract of sale has been postponed at the request of either party, and the contract is ultimately broken, this has the effect of deferring the period at which the breach takes place, and therefore alters the date with reference to which the damages are to be ascertained." See also *Crescent Hosiery Co.* v. *Mobile Cotton Mills*, 140 N. C. 452, 53 S. E. 140, 6 Ann. Cas. 164; Page on Contracts 1589; *Summers* v. *Hibbard*, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; *Ralli* v. *Rockmore* (C. C.), 111 Fed. 874.

[5] Where the defendant waives the time limit stated in the contract, or is solely responsible for the delay, the general rule does not apply, and in such case the plaintiff, until notified that the defendant proposes to breach the contract in some more vital way, has a right to hold the goods subject to the order of the defendant, and when so notified the plaintiff has the option of treating the goods as the property of the defendant and suing him for the whole of the contract price, or of retaining the goods as his own and suing for the difference between the contract price and the market price at the time of bringing the suit. Of course this option must be exercised by the plaintiff in good faith and with reasonable promptness after actual or implied notice that the defendant no longer intends to take and pay for the goods.

[6, 7] We do not overlook the fact that the letter of July 15th from the lumber company to Smith Brothers said: "Please let us know how much more four by four oak you have to apply on order No. 33376," but that letter was a reply to one from Smith Brothers written on July 10th saying: "We are awaiting your orders to load out the balance of your oak and pine." The only oak called for in the contract was "four by four oak," and the letter of July 10th told them in effect that all of the oak as well as all the pine was ready. The inquiry, therefore, in the letter of July 15th was wholly unnecessary and was an idle request for information which the company already had. With this letter out of the way, there is nothing at all in the evidence to show that the defendants ever were denied any rights which they had under the contract; nor is there anything in the evidence to show that they in any way notified the plaintiffs that they would not take all of the lumber. It expressly appears, and is not denied, that the plaintiffs continued to hold the lumber in readiness for compliance with the contract up to the time this suit was brought, treating the lumber as having been sold to the defendant. It does appear that the plaintiffs consulted their attorney in February, prior to the bringing of the suit, about their legal rights in the premises, but they at that time did nothing which precluded them from waiting a reasonable time for the defendant to take up and pay for the lumber. The record does not affirmatively show what advice they got from the attorney, but it does appear that he wrote the defendant asking for payment of the purchase price, and not for damages for the breach of the contract. The plaintiffs could not wait indefinitely before determining to accept the breach and sue for damages, but it was not unreasonable in this case to

27

wait from February until April before bringing the suit. In the meantime, the defendant was being given the right to take the lumber and it never asserted that the plaintiffs had breached the contracts until the suit was instituted.

Upon a view of all the evidence, the instructions which the court gave seem to us to have fairly presented the questions in the case from the standpoint of both parties and to have properly left to the jury the settlement of any conflicts in the testimony. The judgment complained of must be affirmed.

*Affirmed.*