# MAREFIELD MEADOWS, INC.

## v.

# REGULA LORENZ

Record No. 920883

February 26, 1993

Present: All the Justices

256

*Thomas V. Monahan (Hall, Monahan, Engle, Mahan & Mitchell*, on briefs), for appellant.

*William D. Cremins (John P. Flannery, II; Walsh & Cremins*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider whether a contract existed for the purchase of a stallion and, if so, whether the evidence was sufficient to establish the amount of damages sustained by the sellers as a result of a breach of that contract.

In June 1987, Marefield Meadows, Inc. (MFM) and Regula Lorenz, operating as Chestnut Hollow Stable (Lorenz), entered into a partnership agreement for the joint acquisition and care of a Hanoverian stallion, Maronjo. Under the agreement MFM had a two-thirds ownership interest in the stallion and Lorenz had a one-third interest. The agreement also divided liability for the expenses of maintaining or caring for the stallion in the same proportion as the ownership interests. Either party could terminate the arrangement

by requesting the sale of the stallion. In that event, the other party had the right to purchase the interest of the terminating party.

In late 1988, Lorenz resigned as Maronjo's trainer and, in her resignation letter, informed MFM that she would continue to ride Maronjo until MFM "made [its] decision as to whether [it] want[ed] to purchase [Lorenz's] one-third ownership or release him for sale." Both parties retained attorneys and, on February 23, 1989, Lorenz's attorney, Craig White, wrote a letter to MFM's attorney, Georgia Herbert, that stated, in part:

> We consider Mr. Thompson to be a mutually agreed upon appraiser and in accordance with Paragraph 16 of the parties' agreement Ms. Lorenz grants [MFM] the option to purchase her interest for $26,666.66 (1/3 of $80,000). However, if [MFM] prefers, Ms. Lorenz is willing to purchase its interest in Maronjo for $53,333.33 (2/3 of $80,000).

Herbert testified that on March 9, 1989, she told White over the telephone that MFM accepted Lorenz's offer to buy MFM's interest in Maronjo based on the appraised value. Herbert then wrote to White on March 17:

> On instructions from my clients I am writing to confirm my March 9, 1989 over-the-telephone acceptance of your client's offer to purchase Marefield Meadows, Inc.'s interest in Moronjo [sic] for $53,333.33 as indicated in your letters of February 23 and March 9.
>
> . . . .
>
> To make things simpler for Ms. Lorenz my clients will agree to accept payment from her 60 days from now.

Lorenz did not tender the purchase price to MFM. Instead, on May 17, 1989, the day on which payment was due under the terms of the March 17 letter, Lorenz filed suit to dissolve the 1987 partnership. MFM filed a counterclaim for specific performance of Lorenz's agreement to purchase MFM's interest in Maronjo. MFM also sought to recover Lorenz's share of Maronjo's maintenance expenses which MFM had paid both before and after the agreement to purchase.

Lorenz nonsuited her dissolution action. The litigation progressed on MFM's counterclaim against Lorenz.[1]

During the pendency of the litigation, MFM asked the court to appoint a receiver to handle the sale of Maronjo. The trial court, ultimately at the request of both parties, appointed a receiver for this purpose. Maronjo was sold for $56,500 on April 29, 1990. The net proceeds from the sale amounted to $45,200. In accordance with the agreement of the parties embodied in the trial court's order of April 13, 1990, half of the net proceeds, $22,600, was paid to the clerk of the court "to be held . . . and ultimately distributed in accordance with the final decision in the case." The remaining half of the net proceeds was disbursed to the parties in accordance with their respective ownership interests in Maronjo: Lorenz received $7,533.33 and MFM received $15,066.66.

After a two day hearing, the trial court, sitting without a jury, found that White's February 23 letter on Lorenz's behalf constituted an offer to buy MFM's interest in Maronjo, and that MFM accepted that offer in the March 17 letter from Herbert to White. Based upon that finding, the court held that a contract existed between Lorenz and MFM. However, the trial court found that the evidence was insufficient to show that MFM had sustained any "real damages" as a result of Lorenz's breach of that contract. The court then ordered that the remaining balance of the proceeds from Maronjo's sale be released to Lorenz.

MFM, agreeing that the trial court correctly found that a contract for purchase of Maronjo existed, appealed the court's ruling with respect to damages. Additionally, MFM objected to the court's order directing that Lorenz receive the remaining proceeds of the sale. Lorenz assigned cross-error to the trial court's ruling on the existence of a contract. We awarded an appeal on all assignments of error and cross-error. Since a finding that the contract exists is pivotal to imposing liability for damages, we will consider Lorenz's assignment of cross-error first.

---

[1] Lorenz also filed a cross-bill against Burke McCahill, Esq., Craig White, Esq., and the law firm of Hanes, Sevila, Saunders and McCahill. MFM also filed a cross-bill against these third-party defendants. Lorenz settled her claims on the cross-bill. The trial court dismissed MFM's cross-claim, and that judgment has not been appealed.

## I. EXISTENCE OF A CONTRACT

Lorenz asserts that the trial court erred in holding that the letters between the parties created a contract. Lorenz argues that there was no intent to contract, that there was no agreement on the necessary terms, and that the offer was conditional upon Lorenz's ability to procure financing. Lorenz contends that the parties to a contract must intend to be bound by that contract and, as an indicia of that intent, the court must find that there was a meeting of the minds to determine that there is a valid contract. *Harris* v. *Citizens Bank & Trust Co.*, 172 Va. 111, 143, 200 S.E. 652, 665 (1939). She claims that her testimony and her attorney's testimony show that neither she nor the attorney intended the February 23 letter to be an offer.

A meeting of the minds is essential to the formation of a contract, but "the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Lucy* v. *Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954). MFM was entitled to believe that Lorenz meant what she said, and to rely on the clear language of White's February 23 letter: "Ms. Lorenz is willing to purchase [MFM's] interest in Maronjo for $53,333.33." The trial court correctly found that this language constituted an offer by Lorenz to purchase MFM's interest. Neither Lorenz's nor White's unexpressed reservations or intentions can override the written terms of that letter. *Wells* v. *Weston*, 229 Va. 72, 79, 326 S.E.2d 672, 676 (1985).

Lorenz next argues that, even if the February 23 correspondence constituted an offer, the March 17 letter did not create a valid contract because it did not contain an agreement on all the necessary terms and it did not "mirror the offer" as required when creating a contract through the exchange of letters. *Gibney & Co.* v. *Arlington Brewing Co.*, 112 Va. 117, 121, 70 S.E. 485, 487 (1911). We disagree.

The March 17 letter accepted Lorenz's offer to purchase MFM's interest in the stallion "as indicated in [White's] letters of February 23 and March 9." This acceptance was unqualified and introduced no new terms. Thus, it meets the legal requirements for the creation of a contract through letters. *Id.* Issues such as liability for the ongoing expense of caring for the horse, breeding rights, and breeding contracts related to Maronjo set out in subsequent paragraphs of the March 17 letter, while possibly relevant to the dissolution of the partnership, were not necessary to the closing of the

purchase agreement and were not identified by either party as contingencies or conditions of the agreement.

■ Finally, Lorenz's offer was not conditioned on her ability to obtain financing for the purchase. White testified that the February 23 letter contained no qualifications of the offer of sale. While White's March 9 letter informed Herbert that Ms. Lorenz was attempting to secure financing "to enable her to purchase [MFM's] interest in Maronjo," the letter did not state that Lorenz's success in doing so was a condition of, or prerequisite to, the creation of the contract.

■ In summary, White's February 23 letter constituted an offer by Lorenz to purchase MFM's interest in the stallion for $53,333.33. MFM accepted this offer through Herbert's March 17, 1989 letter. Accordingly, the trial court did not err in determining that a valid contract existed.

## II. PROOF OF DAMAGES

MFM sought damages for breach of contract and sought recovery of one-third of the maintenance expenses it incurred for Maronjo from before the date of the contract until the court appointed a receiver to sell the stallion. The trial court denied MFM's claims in their entirety, stating that the evidence was "tangled and conflicting," making it "impossible for the court to fix any sp[e]cific amount of damages," and that MFM failed to prove that it had suffered "any real damages."

Under well-settled principles of appellate review, factual findings of a trial court are not reversed unless they are plainly wrong or without evidence to support them. *Meredith* v. *Goodwyn*, 219 Va. 1025, 1028, 254 S.E.2d 74, 76 (1979). Nevertheless, after reviewing this record, we conclude that MFM did incur "real damages" and that it provided sufficient evidence to support the recovery it seeks.

### A. Breach of Contract Damages

■ The remedy for breach of contract is intended to put the injured party in the same position in which it would have been had the contract been performed. *Appalachian Power Co.* v. *Walker*, 214 Va. 524, 535, 201 S.E.2d 758, 767 (1974). In this case, the offer and acceptance letters establish the agreed purchase price of MFM's interest at $53,333.33. MFM received $15,066.66 from the sale of

Maronjo, and credited this amount against its claim for the purchase price. Consequently, MFM reduced the amount of its damage claim for the breach of contract to $38,266.67 plus interest. MFM produced evidence of "real damages" by showing an as yet unrealized benefit of the bargain MFM anticipated when it accepted Lorenz's offer to purchase its interest in Maronjo.

Lorenz argues that the amount of damages claimed by MFM is improper. In cases involving a breach of contract by the buyer, the seller has more than one method by which to determine the amount of damages. *James River Lumber Co.* v. *Smith Bros.*, 135 Va. 406, 416, 116 S.E. 241, 244 (1923). One generally accepted method of determining damages is to sell the goods to establish their fair market value, keep the sale proceeds, and recover from the defaulting original buyer the difference between the agreed contract price and the resale price. *See also* Va. Code § 8.2-706.

MFM sought to utilize this method here. In contrast to most situations involving a buyer's breach of contract, MFM, the seller, could not unilaterally resell Maronjo at the time of the breach because the breaching party, Lorenz, also owned a share of the stallion. To accomplish this sale, MFM asked the court to intervene and to appoint a receiver. Initially, Lorenz opposed MFM's motion and wanted the court to rescind its order appointing a receiver. Ultimately, Lorenz and MFM reached agreement on the conditions for the sale of Maronjo, as reflected in the trial court's April 13, 1990 order. The proceeds of such a sale normally would not be disbursed in the manner agreed upon. Under the circumstances of this case, however, the terms of the court-sanctioned agreement were reasonable and were consistent with an accepted method of establishing MFM's breach of contract damages. Maronjo's fair market value was established by the resale, and the amount received by the injured seller in the resale was credited against the contract price.

MFM received only $15,066.66 rather than the $53,333.33 it would have received if Lorenz had performed under the contract. It has, therefore, suffered a loss of its bargain in the amount of $38,266.67. Accordingly, we conclude that MFM provided sufficient evidence to show that it had suffered damages as a result of the breach of contract, utilized a proper method to determine the amount of its damages, and sufficiently supported that amount.[2]

---

[2] Lorenz's argument that the only evidence of fair market value was the appraisal provided by Louis M. Thompson, Jr., in his February 1989 evaluation letter is meritless. The

## B. Maintenance Expenses

MFM also sought to recover what it characterized as Lorenz's share of the expenses it paid for the maintenance of Maronjo. MFM claimed maintenance expenses of $2,051.38 for the period of time prior to the contract for sale, and of $1,493.37 for the time period from the contract of sale until Maronjo was sent to California for auction. These figures constituted one-third of the net costs of Maronjo's maintenance during the two time periods.

In support of its claims, MFM offered the testimony of Sharyn Nicholson. Nicholson testified that since December 1987 she had been engaged by MFM as an independent contractor, earning between $1,000 and $3,000 per month. She testified that she handled MFM's books and billings and that "usually everything ultimately goes through me before it goes to the accountant." Beginning in December 1988, Nicholson handled all the billings that related to Maronjo, and prepared statements for Lorenz in accordance with the partnership agreement formula.

MFM attempted to introduce two exhibits through Nicholson. Exhibit 12 was a collection of documents and work sheets, including bills MFM received for Maronjo's maintenance, statements sent to Lorenz for her portion of the maintenance costs, and copies of checks MFM received for Maronjo's stud fees. Exhibit 10 was an exhibit Nicholson prepared based on the exhibit 12 documents that summarized the expenses and the credits applied to Lorenz's account for Maronjo's care from December 2, 1988 until the date of trial.

Lorenz objected to the introduction of exhibits 10 and 12, arguing that there was no proper foundation for their admission. Although the trial court deferred ruling on the issue at that time, the record does not reflect that the trial court ever ruled on the admission of these exhibits. Consequently, we are unable to determine whether the trial court took these exhibits into consideration in making its decision. For purposes of our review, we will first consider the admissibility of the exhibits, and then whether sufficiently clear evidence has been presented to support MFM's recovery of Lorenz's share of Maronjo's maintenance expenses.

---

Thompson appraisal was made to establish the purchase price to be incorporated in the contract, not to establish the fair market value when the contract was breached.

■ MFM argues that Nicholson was a proper witness to support the admission of these exhibits under the shop book exception to the hearsay rule. We agree. The shop book rule allows admission into evidence of the books and records of a business entity without requiring proof from the originators of the record. *E.I. duPont de Nemours & Co.* v. *Universal Moulded Prod. Corp.*, 191 Va. 525, 567-68, 62 S.E.2d 233, 252 (1950). While this rule generally covers only items within the personal knowledge of the recorder, "practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of trustworthiness." *"Automatic" Sprinkler Corp.* v. *Coley & Petersen, Inc.*, 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979). "The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person[s] . . . for [whom] they are kept." *Id.* at 793, 250 S.E.2d at 773.

■ The evidence shows that the documents contained in exhibit 12 were regularly prepared and were relied upon in the transaction of the partnership business by both MFM and Lorenz. Lorenz received statements and remitted monies to MFM based on the documents contained in exhibit 12. That evidence provides the necessary guarantee of trustworthiness and reliability. We conclude that exhibit 12 consists of trustworthy documents and records kept within the regular course of business and, therefore, that it was admissible. Exhibit 10 is also admissible as a summary of these documents, which assists the fact finder and obviates the task of sifting through all of the bills and statements. *duPont Co.*, 191 Va. at 567-68, 62 S.E.2d at 252-53.

■ Lorenz's argument that Nicholson was not qualified to "secure the admission" of exhibits 10 and 12 into evidence because she had not been the recipient of the bills and could not testify as to the reasonableness or accuracy of the bills is based on *Walters* v. *Littleton*, 223 Va. 446, 290 S.E.2d 839 (1982), and *McMunn* v. *Tatum*, 237 Va. 558, 379 S.E.2d 908 (1989). These cases, however, are inapposite. Both were personal injury actions involving medical bills received by an individual person, rather than records kept in the course of business. Ordinarily, the inability of the recorder to testify directly as to the reasonableness of certain charges may affect the weight to be given to that evidence, but does not affect its admissibility. Considering the testimony of Nicholson and exhibits

10 and 12, we hold that MFM met its burden of providing sufficient evidence of the amounts it claims it is entitled to recover from Lorenz for Maronjo's maintenance.

Lorenz next argues that proof of these amounts does not establish that she was liable for them. She maintains that she was not liable for the expenses because she did not authorize or approve them and that paragraph 8 of the partnership agreement imposes liability upon her for only those expenses which she specifically approved. To sustain Lorenz's position, we would have to ignore other parts of the agreement.

Paragraph 5 of the partnership agreement contemplates reimbursement of the ordinary expenses of maintaining Maronjo on a monthly basis, divided by the partners on the basis of their ownership interests. The expenses contemplated included, *inter alia*, training costs, veterinary fees, farrier fees, entrance fees, and advertising costs. These are expenses of the character of those claimed by MFM. Paragraph 8, requiring expense approval, begins with the phrase ''[e]xcept as hereinabove specifically provided.'' The provisions of paragraph 5 regarding monthly reimbursement of ordinary expenses are within the paragraph 8 exception. This reading of the agreement is supported by the fact that Lorenz paid, without question or objection, and over a considerable period of time, the monthly billings she received from MFM for these expenses. The partnership agreement, therefore, establishes Lorenz's liability for the expenses claimed by MFM prior to the contract for sale between the parties.

With regard to liability for expenses claimed subsequent to the contract of sale, MFM asserts that it ''had the legal right to consider *all* expenses those of Lorenz, incurred to preserve her property.'' Nevertheless, MFM did not seek full reimbursement, but based its claim on a proportional allocation of the expenses and credits in accordance with the partnership agreement. Assuming that MFM was entitled to recovery of the full amount of the maintenance expenses for Maronjo during this time period, its decision not to claim the full amount does not preclude it from claiming and recovering a lesser amount. Whether considered under the partnership agreement, the contract of sale, or the terms of the trial court's order involving the appointment of a receiver and sale of Maronjo, Lorenz's liability for the maintenance of Maronjo continued from the time the contract of sale was made until Maronjo was sold in California. Under no theory was Lorenz absolved from liability for

these maintenance costs. Therefore, the trial court erred when it failed to award MFM a recovery for Lorenz's share of the expenses of Maronjo's maintenance.

## C. Mitigation of Damages

The trial court's only indication of its rationale for the determination that the evidence was confused and conflicting, and that MFM had failed to prove that it had suffered any damages, was the court's apparent agreement with a portion of a post-trial memorandum to which it made reference in its opinion letter. That portion of the memorandum addressed the admissibility of exhibits 10 and 12 and the duty of a party injured by a breach of contract to mitigate its damages. On appeal, Lorenz asserts that MFM failed to mitigate its damages because it did not tender or deliver Maronjo to Lorenz.

■ The failure to mitigate damages is an affirmative defense and, therefore, on this point Lorenz, not MFM, had the burden to produce evidence. *Foreman* v. *E. Caligari & Co.*, 204 Va. 284, 290, 130 S.E.2d 447, 451 (1963). While it is not clear how the tender or delivery of Maronjo to Lorenz would have mitigated MFM's damages, there is no evidence that MFM refused to tender the stallion to Lorenz as she claims. Instead, the evidence shows repeated offers to tender the stallion. Herbert's March 17 letter stated that MFM would tender Maronjo upon receipt of payment from Lorenz. MFM's counterclaim sought specific performance of the contract, and recited again MFM's willingness to tender the horse upon payment of the purchase price. Accordingly, we find that Lorenz did not establish that MFM failed to mitigate its damages.

■ In summary, we hold that the trial court was plainly wrong in finding that MFM had failed to show any damages as a result of the breach of contract and that the evidence was too conflicting or confused to establish the amount of MFM's damages. Hence, we will reverse that portion of the judgment of the trial court dismissing MFM's counterclaim against Lorenz, and will enter judgment for MFM against Lorenz on its counterclaim and award damages of $38,266.67 along with interest for breach of contract, and a total of $3,544.75 along with interest for Maronjo's expenses.

## III. DIVISION OF SALE PROCEEDS

The trial court awarded Lorenz the undisbursed proceeds from the sale of Maronjo in accordance with its April 13, 1990 order. This award was predicated on the trial court's erroneous determination that MFM failed to establish its damage claim. In light of our holding on this issue, we must also reverse that portion of the trial court's judgment. MFM is entitled to recover damages from Lorenz in a total amount of $41,711.42 plus interest. The parties agreed, and the trial court concurred, that the remaining sales proceeds should be ''ultimately distributed in accordance with the final decision in the case.'' We see no reason to do otherwise. Accordingly, we will reverse that portion of the judgment of the trial court, and order that the remaining proceeds from the sale of Maronjo be disbursed to MFM in partial satisfaction of its judgment against Lorenz.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*