UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Callins and Senior Judge Humphreys
Argued by videoconference


COMMISSIONER OF HIGHWAYS

v.      Record No. 0710-23-4

496 ELDEN STREET, LLC                              MEMORANDUM OPINION[*] BY
                                                   JUDGE DOMINIQUE A. CALLINS
496 ELDEN STREET, LLC                                 JANUARY 21, 2025

v.      Record No. 0734-23-4

COMMISSIONER OF HIGHWAYS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge[1]

Nancy C. Auth, Senior Assistant Attorney General/Unit Manager
(Jason S. Miyares, Attorney General; Leslie A.T. Haley, Deputy
Attorney General; Chandra D. Lantz, Senior Assistant Attorney
General/Section Chief; Scott W. Carpenter, Assistant Attorney
General; Courtney B. Harden; Kaley Duncan Ward; Briglia Hundley,
P.C., on briefs), for Commissioner of Highways.

J. Chapman Petersen (Federico J. Zablah; Henry E. Howell, III;
Benjamin L. Perdue; Chap Petersen & Associates, PLC; The
Eminent Domain Litigation Group, P.L.C., on briefs), for 496 Elden
Street, LLC.

These consolidated appeals arise from condemnation proceedings brought by the

Commissioner of Highways (the "Commissioner") against 496 Elden Street, LLC ("Elden") for

property located at 496 Elden Street in Herndon, Virginia.  On appeal, the Commissioner argues

that the circuit court erred in (1) finding that the Commissioner and Elden reached a binding

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Since this proceeding, Judge Smith has retired.

settlement on the just compensation owed to Elden, (2) ordering the Commissioner to pay just compensation directly to Elden under Code § 25.1-247.1, and (3) entering a final order on just compensation while bifurcating the issue of lost profits to a separate cause of action. Elden appeals on the grounds that the circuit court erred in denying Elden's request for attorney fees under the 2022 amendments to Code § 25.1-247.1. For the following reasons, we reverse the judgment of the circuit court.

BACKGROUND

This case arises from the condemnation of certain frontage of a commercial site at 496 Elden Street in Herndon, Virginia (the "Property") owned by 496 Elden Street, LLC as part of the Commissioner's Route 6656 road-widening project. The Property is encumbered by a deed of trust for the benefit of John Marshall Bank in the amount of $850,000 dated June 17, 2020, in the land records of Fairfax County. Fairfax County property taxes also accrue and exist as an inchoate lien on the Property.

On December 21, 2020, the Commissioner filed a certificate of take with the Clerk of the Circuit Court of Fairfax County, acquiring defeasible title to the Property under Code § 25.1-308, and deposited $269,179 with the circuit court reflecting the Commissioner's assessment of the just compensation owed to Elden. Elden petitioned to draw down the deposited funds under Code § 33.2-1023, and the circuit court entered an order on March 1, 2021, directing the Clerk to disburse the funds and accrued interest to Elden. On August 25, 2021, the Commissioner filed a petition for condemnation under Code § 25.1-205 requesting a trial to determine the just compensation owed to Elden. On September 17, 2021, Elden filed an answer also requesting a trial to determine just compensation. Trial to determine just compensation by a panel of commissioners was initially set for November 14, 2022.

- 2 -

In the months before trial was set to commence, the parties exchanged email communications to explore a potential settlement. In an email dated September 30, 2022, the Commissioner told Elden that "[a]s to the [fair market value]: I have approval for settlement at $322,000, with the 'final' date of settlement being the date the final order is entered with the court." The Commissioner also stated that it would prepare an "Agreement After Certificate" ("AAC")[2] to be signed by both parties to finalize the proposed settlement. On October 20, 2022, the Commissioner emailed the AAC to Elden, and Elden's counsel replied that the AAC "[l]ooks fine substantively" except for a "couple of typos" and that he would "work on getting it signed." The Commissioner replied that the typo fixes were "fine."

On October 24, 2022, Elden's counsel sent an email to the Commissioner with an attached letter signed by an agent from John Marshall Bank stating that the bank was waiving its rights under the deed of trust's condemnation clause to the $322,000 settlement amount. In the email, Elden's counsel stated that "[o]n the AAC, I forgot to include language having the compensation paid directly to owner/counsel since there are now no liens with the condemnation clause waiver. My apologies. See attached edit."[3] The Commissioner replied that "[t]he AAC cannot be modified to pay the funds directly to the landowner" and that "[i]n order for indefeasible title to be granted by the court, the funds must pass through the court pursuant to

---

[2] Elden refers to the AAC as an "After Acquisition Certificate."

[3] As to the method of payment, the AAC originally stated:

> The GRANTOR agrees that any funds due to or for the benefit of the GRANTOR pursuant to this Agreement are deemed to have been paid to the GRANTOR (or the GRANTOR'S attorney if the GRANTOR has properly agreed and consented thereto and executed documentation satisfactory to the GRANTEE memorializing said agreement and consent), at the time of deposit of the funds with the court, regardless of whether or not deposited funds are or will be retained by the court pending further proceedings regarding liens, allocation, or entitlement to the funds.

Virginia law (Va. Code Section 25.1-317 and 33.2-1027)." At this point, negotiations came to an impasse, with Elden maintaining its belief that a binding settlement had been reached on just compensation, and the Commissioner maintaining its belief that the parties did not reach a binding settlement because the AAC had not been signed. The parties never signed the AAC.

On October 28, 2022, Elden filed a motion requesting the circuit court to enforce the purported settlement and to order the Commissioner to pay the settlement amount, as well as fees and costs, directly to Elden, pursuant to Code § 25.1-247.1. In an opinion letter dated December 29, 2022, the circuit court found that the parties' email exchanges constituted a binding settlement on just compensation and that, under Code § 25.1-247.1, the Commissioner had to pay the settlement amount directly to Elden or Elden's counsel. The Commissioner filed a motion for reconsideration, and Elden filed a motion seeking an award of attorney fees and interest under the 2022 amendments to Code § 25.1-247.1 and a motion to bifurcate its lost profits claim under Code § 25.1-230.1(F).

On March 31, 2023, the circuit court entered a final order requiring the Commissioner to pay just compensation directly to Elden's counsel, granting the Commissioner indefeasible title to the Property, denying the Commissioner's motion for reconsideration, and denying Elden's request for attorney fees and interest. The circuit court also granted Elden's request to bifurcate its lost profits claim from the rest of the proceedings and ordered that Elden "shall file a separate action to pursue its lost profits claim" against the Commissioner. These consolidated appeals followed.

ANALYSIS

The principles regarding the formation of binding contracts and settlement agreements are well established. "Where, as here, the material facts concerning the formation of an alleged contract are not in dispute, the issue of contract *vel non* is a question of law." *Valjar, Inc. v.*

- 4 -

*Maritime Terminals, Inc.*, 220 Va. 1015, 1018 (1980). Generally, "[t]he law favors compromise and settlement of disputed claims." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995) (quoting *Bangor-Punta Operations, Inc. v. Atl. Leasing, Ltd.*, 215 Va. 180, 183 (1974)). "However, the essentials of a valid contract must be present to support a compromise settlement. A compromise to be binding must arise from a complete agreement and before an agreement can be complete there must be an acceptance of an offer." *Bangor-Punta*, 215 Va. at 183. "Perhaps most importantly, 'mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts. Until the parties have a distinct intention common to both . . . there is a lack of mutual assent and, therefore, no contract.'" *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) (alteration in original) (quoting *Phillips v. Mazyck*, 273 Va. 630, 636 (2007)).

Further, "where parties intend to culminate their agreement with a signed contract, there is a strong presumption that no contract exists until a contract is formally signed and in writing." *Id.* at 76. "Overcoming such a presumption requires 'strong evidence.'" *Id.* at 77 (quoting *Andrews v. Sams*, 233 Va. 55, 58 (1987)). "Correspondence between parties can result in a binding contract [only] if the letters and telegrams, fairly construed, correctly express all of the terms to which the parties agree, even though the parties understand that the agreement shall thereafter be expressed in a formal writing." *Chittum v. Potter*, 216 Va. 463, 467 (1975). "It is crucial to a determination that a contract exists, however, that the minds of the parties have met on every material phase of the alleged agreement." *Id.* "In order to form a contract there must be no material variance between the acceptance and the offer." *Id.* at 468. The offeror

> has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters, which it may please him to insert in and make a part thereof, and the acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand.

*Chang v. First Colonial Sav. Bank*, 242 Va. 388, 393 (1991) (quoting *Gibney & Co. v. Arlington Brewery Co.*, 112 Va. 117, 121 (1911)). To be effectual, an acceptance

> must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement.

*Gibney*, 112 Va. at 121 (quoting Cyclopedia of Law and Procedure 267-68 (9th ed. 1903)). "When an agreement is sought to be established by means of letters, such letters will not constitute an agreement, unless the answer be a simple acceptance of the proposal without the introduction of any new term." *Id.* (quoting *Va. Hot Springs Co. v. Harrison*, 93 Va. 569, 576 (1896)). "The assent must comprehend the whole of the proposition; it must be exactly equal to its extent and provisions, and it must not qualify them by any new matter." *Harrison*, 93 Va. at 576 (quoting 1 Parsons on Contracts 476 (6th ed.)). "A contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord." *Valjar*, 220 Va. at 1018.

Applying these bedrock contract-formation principles, we hold that the circuit court erred in finding that the Commissioner and Elden reached a binding settlement on just compensation. Despite their initial email communications agreeing as to the amount of just compensation, the parties here clearly intended to culminate their settlement with a complete, written, signed contract—the AAC—which was ultimately never signed or agreed to by the parties. And "where parties intend to culminate their agreement with a signed contract, there is a strong presumption that no contract exists until a contract is formally signed and in writing." *Moorman*, 276 Va. at 76. This strong presumption under Virginia law cannot be overcome here.

Elden contends that the parties' email communications constituted a binding settlement agreement because the only term that was material to the parties' settlement was the amount of

just compensation, and nothing else. But despite Elden's assertions to the contrary, the Commissioner's provision in the AAC as to the method of payment was also a material aspect of the settlement agreement. *See Material*, *Black's Law Dictionary* (12th ed. 2024) ("Of such a nature that knowledge of the item would affect a person's decision-making; significant; essential."). Even if we assumed that, under Code § 25.1-247.1,[4] the Commissioner could not lawfully insert a provision in the AAC that the just-compensation funds would be deposited with the circuit court (rather than paid directly to Elden), that provision was nevertheless still material to the settlement because any legal error by the Commissioner as to this provision would have significantly affected the Commissioner's decision whether to enter into a settlement with Elden in the first place. Under these circumstances, it cannot truly be said that "the minds of the parties have met on every material phase of the alleged agreement." *Chittum*, 216 Va. at 467. Therefore, the parties did not reach a binding settlement.

Since we hold that the parties did not reach a binding settlement on just compensation, we further hold that the remaining assignments of error in these consolidated appeals are not yet ripe for appellate review. *See Berry v. Bd. of Supervisors*, 302 Va. 114, 131 (2023) ("[T]he concept of ripeness applies to claims that, while potentially viable at some point in the future,

---

[4] Code § 25.1-247.1 provides, in relevant part:

> Notwithstanding any other provision of this chapter, upon any settlement or final determination resulting in a judgment for the owner, whether funds have been paid into the court or are outstanding, all such funds due and owing shall be payable to the owner or, if the owner consents, to the owner's attorney within 30 days of the settlement or final determination, unless otherwise subject to § 25.1-240, 25.1-241, 25.1-243, or 25.1-250. Nothing in this section shall be construed to alter the priority of liens or any obligation to satisfy or release any outstanding liens on the property or the funds. The failure to pay these sums within 30 days to the property owner, as specified herein, shall result in an award of attorney fees and interest at the judgment rate from the date the funds became due and owing.

have yet to mature into a justiciable controversy.").  Since the parties have not reached a binding settlement, the provisions of Code § 25.1-247.1 do not apply yet in this case because neither a "settlement" nor a "final determination resulting in a judgment for the owner" (i.e., a trial to determine just compensation) has occurred, and the circuit court is consequently not yet in a position to render an order awarding just compensation to Elden.  Code § 25.1-247.1.  In the absence of a settlement, the parties would need to have a trial to determine just compensation. Upon a determination of just compensation, Code § 25.1-247.1's provisions would come into effect—and their application ripe for appellate review—regardless of whether the parties reached a settlement.

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*