PRESENT:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
          Agee, JJ., and Compton, S.J.

BRUCE FORBES

v.  Record No. 041722   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          April 22, 2005
RAYMOND E. RAPP, TRUSTEE, HARRISONBURG
PHYSICIANS FOR ANESTHESIOLOGY, INC., ETC., ET AL.


          FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                  John J. McGrath, Jr., Judge

     In this appeal, we consider whether the chancellor erred:

1) in awarding damages to a property owner for breach of a

contract for the sale of land offered at public auction; and 2)

in admitting certain expert testimony.

     The following facts are undisputed.  In the spring of 2003,

Raymond E. Rapp hired Bland Land Company (BLC) to sell about 143

acres of undeveloped mountain land in Rockingham County (the

property) at a public auction.[1]  BLC produced and distributed a

brochure containing photographs, maps, and a description of the

property that stated it was "[t]o be sold by a trustee under

special warranty, with a deeded right of way."  Bruce Forbes, an

adjoining landowner, received a copy of the brochure before the

auction and decided to attend.

     BLC held the auction on May 17, 2003.  Before the auction,

Gerald C. Bland, owner of BLC, circulated and read aloud a

document entitled "Rapp Auction Sale Announcements." One of the announcements stated, "Included with the property is an appurtenant right of way over and across the existing access road we all used this morning[.]"

At the end of the auction, Forbes was the high bidder for the property at $3,600 per acre, for a total bid price of $514,944. Gregory S. Kellam was the second-highest bidder at $3,550 per acre. Forbes tendered a ten percent deposit and signed an acknowledgment agreeing to purchase the property. Under the auction terms, Forbes agreed to settle on the property on or before June 17, 2003, and to pay a penalty for any delay.

Forbes later unsuccessfully tried to reach an agreement to sell the property to Kellam. On June 30, 2003, Forbes, by counsel, notified Rapp that he was withdrawing his offer to purchase the property and demanded the return of his deposit. Forbes stated that his withdrawal was based on "misrepresentations regarding the existence of a deeded right of way to the property and . . . the ability to subdivide the property." Rapp eventually sold the property to Kellam for $400,000.

Forbes filed an amended bill of complaint against Rapp, BLC, and Bland (collectively, the defendants) seeking rescission

---

[1] Harrisonburg Physicians for Anesthesiology, Inc., Profit Sharing Plan Earmark Investment Trust No. (1) owned the

of Forbes' contract to purchase the property and the return of his deposit. In the alternative, Forbes sought damages for breach of contract or breach of an "implied understanding" that his deposit would be returned if the parties failed to reach an agreement. He also claimed that the defendants wrongfully converted his deposit. Forbes' claims were based on allegations that the property did not have a deeded right of way, and that the defendants' representations in the brochure and auction sale announcements were false and misleading. He sought compensatory damages equal to his $51,490 deposit and punitive damages of $250,000.

In response, Rapp filed an answer and a cross-bill for breach of contract against Forbes.[2] Rapp alleged that Forbes breached his express written agreement to purchase the property when he failed to close on the property and informed Rapp that he did not intend to complete the transaction. Rapp sought damages of $114,900, the difference between Forbes' bid price and the amount received in the sale to Kellam.

The chancellor heard the evidence in a bench trial. The majority of the evidence addressed the value of the property and whether Rapp failed to mitigate damages incurred as a result of Forbes' alleged contract breach. Forbes presented the testimony

property. Rapp sold the property in his capacity as trustee.

of his son, Jeffrey C. Forbes (Jeffrey), who stated that the property contained timber worth at least $150,000, and that the property was worth between $1,000 and $1,500 per acre, excluding the timber value.

Forbes testified that he was surprised that the bidding for the property exceeded $2,000 per acre, but that the property was worth $3,600 per acre to him as protection for his adjoining land.  Forbes agreed with Jeffrey's valuation of the timber on the property.  Forbes also presented testimony from Dean M. Nichols, one of his attorneys, and Kevin Williams, his agent, who both stated that Kellam had been willing to pay Forbes $450,000 for the property.

Rapp presented testimony from various witnesses.  Kellam testified he originally hoped to purchase the property for $300,000, and that he intended to make no higher bid than $380,000, but that he nevertheless made a final bid of $3,550 per acre, or about $505,000.  Kellam stated that he negotiated with Forbes to purchase the property after the auction and that, although he indicated an interest in paying about $450,000 for the property, he never made a written offer.  Kellam also stated that Bland approached him about purchasing the property after

---

[2] BLC and Bland filed an answer, special plea in bar, and interpleader action.  They are not parties to this appeal.

4

Forbes refused to complete the sale, and that Kellam ultimately purchased the property for $400,000.

Rapp also presented the expert testimony of Michael W. Pugh, a certified real estate appraiser. Pugh testified that he appraised the property and determined that it had a fair market value of $415,000. He stated that this figure represented an accepted range for fair market value of plus or minus ten percent, as is customary in the field of real estate appraisal. Pugh acknowledged that he did not assign value to any timber on the property.

Regarding Rapp's efforts to mitigate damages, Bland testified that the only effort he made on Rapp's behalf after Forbes refused to complete the sale was to contact Kellam about purchasing the property. Bland also stated that he was "astounded" at the high price Forbes had bid for the property, and that he advised Rapp to sell the property to Kellam for $400,000 because Bland thought that this price was still "high as a kite."

Rapp presented the expert testimony of George R. Heatwole, a licensed auctioneer and real estate broker, who had auctioned about 100 properties per year over the past 25 or more years. Over Forbes' objection, the chancellor asked Heatwole to relate his experience re-auctioning real estate that had not settled after a first auction. Heatwole replied that in such instances,

his experience has been that the real estate sold at a lower price at a second auction.

The following exchange then occurred between Heatwole and Rapp's counsel:

Q:  Can you quantify whether it's significantly less or close to the same price, but less?

A:  Well, it happens so infrequently and, you know, my experience has been, gosh, a, a figure off the top of my head would be 10 to 20 percent less at least, but it happens so infrequently that I, I don't have a basis.

Forbes objected to this testimony, arguing that it was speculative.  The chancellor overruled the objection.  Heatwole further testified that auctioneers in Virginia generally agree that it is not a good practice to re-auction property that has failed to close, and that he would recommend against doing so. David A. Penrod, one of Rapp's attorneys, also testified that he advised Rapp that putting the property up for auction a second time would be "a bad idea."

At the conclusion of the evidence, the chancellor held that Forbes wrongfully breached his contract to purchase the property from Rapp.  The chancellor found that Forbes' testimony was "totally lacking in credibility," and that Forbes' conduct after the auction "was a continual pattern of acting in bad faith." The chancellor concluded that the fair market value of the property was $415,000, and awarded Rapp judgment on the cross-

6

bill in the amount of $99,944.00, the difference between Forbes' final bid and the fair market value, plus interest. The chancellor entered a final judgment order reflecting this award and dismissing all Forbes' claims against the defendants. Forbes appeals.

Forbes argues that the chancellor erred in awarding judgment to Rapp because Rapp failed to mitigate his damages. According to Forbes, Rapp should have re-auctioned the property, advertised the property for sale to the general public, placed the property with a "multiple listing service," or contacted other bidders in addition to Kellam. Forbes asserts that the record shows that Rapp did not obtain a reasonable price for the property, because Kellam previously had offered a much higher price to both Forbes and Rapp. Forbes also argues that the chancellor erred in admitting Heatwole's testimony because it was speculative and Heatwole was unfamiliar with the facts surrounding the auction at which Forbes purchased the property.

In considering the merits of these arguments, we apply an established standard of review. The chancellor, who heard the evidence ore tenus, evaluated the witnesses' testimony and their credibility. See Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003); Tauber v. Commonwealth, 263 Va. 520, 526, 562 S.E.2d 118, 120 (2002). Thus, his judgment is entitled to the same weight as a jury verdict. The

7

Dunbar Group, LLC v. Tignor, 267 Va. 361, 366-67, 593 S.E.2d 216, 219 (2004); Chesterfield Meadows Shopping Ctr. Assocs., L.P. v. Smith, 264 Va. 350, 355, 568 S.E.2d 676, 679 (2002).  We will not set aside the chancellor's judgment on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Tignor, 267 Va. at 367, 593 S.E.2d at 219; Shooting Point, 265 Va. at 264, 576 S.E.2d at 501.

We first consider Forbes' argument that Rapp failed to mitigate his damages.  We have long recognized the obligation of an injured party to mitigate damages.  Thus, when a purchaser has breached a contract for the sale of real estate, the seller nonetheless has the duty of making reasonable efforts to mitigate damages resulting from the breach, and to the extent that the seller fails to do so, he may not recover the additional damages incurred.  Lawrence v. Wirth, 226 Va. 408, 412, 309 S.E.2d 315, 317 (1983); Haywood v. Massie, 188 Va. 176, 182, 49 S.E.2d 281, 284 (1948); Restatement (Second) of Contracts § 350, cmt. b. (1981); Charles T. McCormick, Handbook on the Law of Damages § 33 (1935); see Jennings v. Realty Developers, Inc., 210 Va. 476, 483, 171 S.E.2d 829, 834-35 (1970).

An assertion that an injured party has failed to mitigate damages is an affirmative defense.  See R.K. Chevrolet, Inc. v. Bank of the Commonwealth, 256 Va. 74, 77, 501 S.E.2d 769, 771

8

(1998); Stohlman v. S&B Ltd. P'ship, 249 Va. 251, 256, 454 S.E.2d 923, 926 (1995); Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 266, 427 S.E.2d 363, 369 (1993). In the present case, Forbes, as the party asserting this defense, bore the burden of proof on that issue. See R.K. Chevrolet, 256 Va. at 77, 501 S.E.2d at 771; Stohlman, 249 Va. at 256, 454 S.E.2d at 926; Marefield Meadows, 245 Va. at 266, 427 S.E.2d at 369.

We conclude that Forbes did not satisfy his evidentiary burden. First, he failed to present any evidence that marketing the property in the manner he advocated would have resulted in a higher purchase price for the property. Second, the chancellor was not required to accept Forbes' testimony that Kellam had offered $450,000 for the property as evidence of the property's value, because Kellam testified that he had not made a written offer at that price and ultimately had concluded that "it wasn't a deal that I was interested in."

In the absence of further evidence from Forbes, the chancellor found that the fair market value of the property was $415,000, which was supported by Pugh's expert testimony. This amount surpassed the valuation placed on the property by Forbes' son, Jeffrey, whose highest estimate of the combined timber value and land value of the property was $364,500. Moreover, Forbes had testified that the property was worth between $250,000 and $300,000. Therefore, Forbes' own evidence showed

9

that Rapp sold the property for more than its fair market value. Based on this record, we hold that the chancellor did not err in rejecting Forbes' claim that Rapp failed to mitigate his damages.

We next consider Forbes' argument that the chancellor erred in admitting Heatwole's testimony. Before expert testimony may be admitted in a civil case to assist the fact finder, that testimony must meet certain requirements, including the requirement of an adequate factual foundation. Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002); John v. Im, 263 Va. 315, 319-20, 559 S.E.2d 694, 696 (2002); see Code §§ 8.01-401.1 and -401.3. Generally, the decision whether to admit expert testimony is a matter committed to the chancellor's sound discretion, and we will reject the chancellor's determination in this regard only when the record shows an abuse of that discretion. John, 263 Va. at 320, 559 S.E.2d at 696; Virginia Elec. & Power Co. v. Dungee, 258 Va. 235, 258, 520 S.E.2d 164, 177 (1999).

Expert testimony is inadmissible if it is speculative or based on assumptions that have an insufficient factual basis. Countryside Corp., 263 Va. at 553, 561 S.E.2d at 682; John, 263 Va. at 320, 559 S.E.2d at 696; Keesee v. Donigan, 259 Va. 157, 161, 524 S.E.2d 645, 648 (2000); Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 466 (1995).

Expert testimony is also inadmissible when an expert has not considered all variables bearing on the inferences to be drawn from the facts presented. Countryside Corp., 263 Va. at 553, 561 S.E.2d at 682; John, 263 Va. at 320, 559 S.E.2d at 696; ITT Hartford Group, Inc. v. Virginia Fin. Assocs., Inc., 258 Va. 193, 201, 520 S.E.2d 355, 359 (1999).

We agree with Forbes that certain portions of Heatwole's testimony were inadmissible because they were speculative and lacked an adequate factual foundation. Heatwole improperly was allowed to testify that real estate auctioned a second time sold at a lower price, without being required to consider whether the facts presented here would have led to a different conclusion concerning the expected price at a re-auction. Also, in attempting to fix a percentage at which a purchase price generally might be expected to decrease upon a re-auction, Heatwole effectively conceded that he lacked a factual basis for rendering such an opinion but nevertheless stated a figure "off the top of [his] head."

We disagree, however, with Forbes' contention that the improper admission of these portions of Heatwole's testimony requires reversal of the chancellor's judgment. Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result. Blue Stone Land Co., Inc. v.

*Neff*, 259 Va. 273, 279, 526 S.E.2d 517, 519 (2000); *Rhoades v. Painter*, 234 Va. 20, 24, 360 S.E.2d 174, 176 (1987); see *Holmes v. LG Marion Corp.*, 258 Va. 473, 483, 521 S.E.2d 528, 535 (1999).

Heatwole's testimony was relevant to show that Rapp did not fail to mitigate his damages by declining to re-auction the property. However, because Forbes did not present evidence that Rapp would likely have obtained a higher price if he had re-auctioned the property, Heatwole's testimony merely served as an unnecessary rebuttal to a defense that was not proved. Thus, we hold that the chancellor's error in admitting this evidence was harmless because it could not have affected the result that he reached in this case.

For these reasons, we will affirm the chancellor's judgment.

*Affirmed.*
