COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia


JAMES C. CALDWELL

                                              MEMORANDUM OPINION* BY
v.        Record No. 2108-13-3                JUDGE ROSSIE D. ALSTON, JR.
                                              AUGUST 19, 2014
ANGELA H. CALDWELL


            FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
                        Daniel T. Balfour, Judge Designate

            B. Spencer Cross (Nelson, McPherson, Summers & Santos, L.C.,
            on briefs), for appellant.

            Paul A. Dryer (Franklin, Denney, Ward & Dryer, PLC, on brief),
            for appellee.


        James C. Caldwell (husband) appeals a final order of the trial court finding husband in

violation of a health insurance provision in the parties' post-separation agreement.  On appeal,

husband argues that the trial court erred i) by ruling that the agreement required husband to

provide and pay for Angela H. Caldwell's (wife) health insurance premiums for an unlimited

duration post-divorce; ii) in holding that the agreement required husband to pay for wife's

unreimbursed medical expenses for an unlimited duration post-divorce; iii) because the relief and

damages awarded to wife were speculative and not supported by the evidence; and iv) in

ordering husband to pay wife's attorney's fees.  Wife assigned error to the trial court's decision

to grant husband a credit against the unreimbursed medical expenses wife incurred between July

1, 2009 through June 15, 2013.  Finding no error, we affirm.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. Background[1]

The parties were married on October 13, 1968, and divorced by final decree on June 4, 2006. During the marriage and at the time of separation, the parties were both employees and stockholders of Majict Corporation, which produced a local publication and operated out of the parties' marital home. On the date of their separation, August 30, 2002, the parties entered into a "Separation Agreement and Stipulation in Accordance with [Code] §§ 20-109 and 20-109.1" (Agreement). Section 2.9 of the Agreement (the health insurance provision), which appeared under Article II titled "Ownership of and Employment of Majict Corporation" provided as follows:

> Health insurance coverage for the Wife is currently provided under a policy maintained by Majict Corporation. Husband shall continue to cover and pay for health insurance coverage for the Wife as the spouse of the Husband under such policy maintained by Majict Corporation. In the event of a divorce between the parties, Husband agrees to pay for health insurance coverage that is substantially identical to that provided by the policy at Majict Corporation, provided, however, the Husband shall have the right to select the least expensive policy available for such purpose which shall provide substantially the same benefits as the policy of the Majict Corporation for the Wife. Husband agrees to pay for any and all medical expenses of the Wife that the insurance does not cover.

On October 5, 2012, wife filed a petition for a rule to show cause why husband should not be held in contempt for failure to provide and pay for wife's health insurance or unreimbursed medical expenses. Wife amended her petition on January 23, 2013, alleging that she had incurred a total of over $20,000 in out-of-pocket medical expenses not covered by insurance since 2007. The trial court held a hearing on wife's petition on August 30, 2013.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

At the hearing, the parties stipulated that wife was insured continuously on a health insurance policy provided and paid for by Majict from August 2002 through March 2007. More particularly, from 2002 through 2005, wife was covered as husband's spouse under his policy paid for by Majict, and from 2005 through 2007, wife was insured on her own policy paid for by Majict. Wife testified that after a visit to her physician in March 2007 she learned that she no longer had health insurance. At trial, wife testified that after learning this she contacted husband and that he stated he could not afford coverage for her and that she would have to find her own policy.

In December 2008, wife purchased an online health insurance policy with a monthly premium of $219.95. Wife stated that Majict Corporation did reimburse her for the monthly premium for the online policy from December 2008 through June 2009 by sending her a check. Wife testified that the online policy did not really cover any of her medical expenses, including prescriptions, and that the reimbursement check from Majict to wife was counted as income on her W-2, which had tax consequences. Based on these circumstances, wife testified that she cancelled the internet policy in June 2009. Wife notified husband by letter dated July 6, 2009, that she had cancelled the online policy and that she would obtain a new policy soon. Wife also returned Majict's check for the June premium payment. Wife testified that she did not have any health insurance from July 1, 2009, until she received Medicare coverage beginning in June or July 2013. Wife's Medicare coverage cost was $105 per month, however wife did not know how much the prescription component would cost.

With respect to unreimbursed medical expenses, wife testified that she sent husband every bill she received since 2002 and that husband never paid them, with the exception of two bills, one from Dr. DiCicco, wife's chiropractor, and the other a garnishment summons from the University of Virginia. Wife sent husband the bills quarterly in the first year after execution of

- 3 -

the Agreement and thereafter sent the bills to husband annually. Wife said that she spoke to husband on the phone after execution of the Agreement about paying her unreimbursed medical expenses and that husband stated that "[t]he Agreement says I have to pay but not when I have to pay . . . I need to pay, just never said when I will pay." Wife identified bills from CVS pharmacy and a summary of medical expenses from shortly before execution of the Agreement in 2002 through January 2013, which totaled $19,822.77.[2]

Husband testified that prior to March of 2007, Majict Corporation began searching for a more affordable health insurance policy. Husband stated that he sent wife application forms for two health coverage options, asking that wife complete the forms and return them to him. Husband agreed that wife returned the first application but testified that wife did not return the second application for the health insurance policy husband ultimately selected from the Majict options, resulting in the termination of her coverage through the Majict policy.

As for unreimbursed medical expenses, husband testified that he never received any medical treatment bills or communications from wife other than Dr. DiCicco's and UVA's bills. Husband stipulated that the CVS pharmacy bills admitted into evidence were true and accurate, but denied that the bills contained expenses husband was liable for under the Agreement. Husband also stipulated that wife's summary of her medical expenses was in fact an accurate summary of wife's medical billing, but argued that it called for speculation. Husband further argued that wife's summary of expenses failed to take into account the bills not submitted to insurance as contemplated under the Agreement. After the close of evidence, husband argued that he was liable for medical expenses not covered by wife's insurance as contemplated by the

_____

[2] Prior to April 2007, wife's medical and pharmacy records show that a portion of her medical and prescription expenses were paid by insurance and that wife was charged with paying the balance. After April 2007, wife's medical and prescription records show no third party insurance payments for wife's medical expenses.

- 4 -

Agreement, but that he was not liable for any expenses not first submitted to insurance for reimbursement.

On October 14, 2013, the trial court entered an order finding that "the most accurate testimony between the parties was that of [wife]." The trial court found that wife did return the application for new insurance to husband in 2007, and further that she sent husband her uninsured medical bills from August 30, 2002, to the date of filing her petition and provided medical expenses incurred from January 1, 2013 through June 15, 2013, to husband's counsel.

With respect to the health insurance provision, the trial court held that the terms of the Agreement required husband to pay for wife's medical expenses "regardless of whether he received the medical bills from [wife]." Further, the trial court held that the health insurance provision of the Agreement was clear and unambiguous and required husband to pay for both wife's health insurance coverage and unreimbursed medical expenses for an unlimited duration. As a result, the trial court found that husband violated the Agreement by failing to pay for wife's health insurance coverage from April 1, 2007 to December 2008. Husband further violated the terms of the Agreement by failing to pay wife's medical expenses, other than Dr. DiCicco's and UVA's bills, from August 30, 2002 through June 15, 2013. The trial court did find that husband was entitled to a credit of $219.95 a month from July 1, 2009 through June 15, 2013, to be applied against wife's uninsured medical expenses incurred during the same time period due to wife's failure to mitigate her health care expenses as evidenced by her voluntary cancellation of her online health insurance policy on July 1, 2009, which resulted in her being uninsured from that date to June 15, 2013.

Accordingly, the trial court ordered husband to pay i) wife's current health insurance premiums, including her Medicare Part B premium, and any supplemental insurance premium including prescription drug premiums; ii) any and all of wife's uninsured medical expenses;

iii) $7,736.02 to wife for uninsured medical expenses incurred from August 30, 2002 through June 15, 2013, after applying husband's credit[3]; and iv) $1,200 to wife for attorney's fees related to prosecuting the rule to show cause. The trial court denied wife's request for reimbursement of dental expenses. This appeal followed.

## II. Analysis

Husband argues on appeal that the trial court created a duty to "cover" or provide insurance to wife for an unlimited duration that did not exist in the Agreement's health insurance provision. In this regard, husband maintains that the health insurance provision required wife to obtain her own coverage and required husband to pay for coverage obtained by wife, provided it was substantially similar to the coverage provided by Majict's policy. Husband also asserts that his duty to pay for wife's coverage was not unlimited in duration, but rather that the obligation lasted no longer than ten years after execution of the Agreement. Correspondingly, husband argues that the trial court incorrectly determined that the health insurance provision required husband to pay for wife's unreimbursed medical expenses for an unlimited duration. Husband also asserts that he was only obligated to pay for out-of-pocket medical expenses remaining after submission to an insurance company. Therefore, for the periods of time during which wife did not have coverage, husband submits that he was not responsible for paying any of her medical expenses because they were not first submitted to an insurance company for reimbursement. Finally, husband argues that the damages the trial court awarded to wife were speculative and not traceable to husband's alleged breach of the Agreement, but rather due to wife's voluntary decision to not obtain health insurance coverage. Wife argues that the trial court did not err in

---

[3] Wife sought a total of $19,882.77 in damages for unreimbursed medical expenses; however she conceded that $3,711 of that total was for dental expenses not covered by the Agreement, resulting in a total sought of $16,171.77. In its final order, the trial court credited husband $219.95 for forty-seven and one-half months, or $10,447.63. Though the total sought by wife minus husband's credit does not add up to $7,736.02 by this Court's math, the parties do not dispute that aspect of the trial court's calculation.

interpreting the health insurance provision but that it did err in awarding husband a credit of $219.95 per month from July 2009 through June 2013 against the amount he owed to wife for unreimbursed medical expenses from August 2002 through June 2013.

### A. Interpretation of the Health Insurance Provision

A property settlement agreement "is governed by the same rules of construction applied to other contracts." Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 350 (2008) (*en banc*) (citing Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006); White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999); Irwin v. Irwin, 47 Va. App. 287, 292-93, 623 S.E.2d 438, 441 (2005)). A factual finding necessarily implied by the award of damages on a contract claim is "'entitled to the same weight as a jury verdict,' and we will not disturb it unless it is 'plainly wrong or without evidence to support [it].'" Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382, 399, 732 S.E.2d 676, 685 (2012) (quoting Jean Moreau & Assocs. v. Health Center Comm'n, 283 Va. 128, 142, 720 S.E.2d 105, 113 (2012)). But, "'[t]he trial court's interpretation of [a] PSA is an issue of law that we review *de novo*.'" Stroud v. Stroud, 54 Va. App. 231, 236, 677 S.E.2d 629, 631 (2009) (quoting Stacy, 53 Va. App. at 43, 669 S.E.2d at 350).

> When applying these rules, the court's function is to "construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by the contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Stacy, 53 Va. App. at 44, 669 S.E.2d at 351 (quoting Irwin, 47 Va. App. at 293, 623 S.E.2d at 441). The Supreme Court of Virginia has repeatedly held that it will not rewrite contracts to insert provisions not contemplated by the parties and specifically that it will not do so "by construing contracts without termination dates to imply a reasonable time for its period of

performance." Jones v. Harrison, 250 Va. 64, 68-69, 458 S.E.2d 766, 769 (1995) (citation omitted).

Bearing these principles in mind, we hold that the trial court did not err in finding that the health insurance provision required husband to both provide and pay for wife's health insurance premiums and medical expenses for an unlimited duration. By requiring husband to provide wife health insurance through Majict as his spouse during the pendency of the divorce and then providing him the option of selecting the least expensive policy with substantially similar benefits once the spousal policy was no longer viable (upon the divorce), the provision required husband to both provide and pay for wife's health insurance premium.

The health insurance provision's location in the Agreement also supports this conclusion. By including it in the Majict Corporation section, the parties reflected an intention for wife to remain covered through Majict's group health insurance policy. The health insurance provision merely set out the practical aspect of attaining that goal: Once the parties divorced, wife could no longer maintain coverage as husband's spouse on the Majict policy and she would therefore need her own policy through Majict.

Moreover, this is evidenced by the parties' actions through the pendency of the divorce and until 2007 when husband decided to look for a new insurance provider for Majict. While the parties provided conflicting testimony on the issue of whether wife completed and returned her application for a new insurance policy in 2007, the trial court made the factual finding that wife did in fact do so and we will not overturn findings of fact unless they are plainly wrong or without evidence to support them. See Preferred Sys. Solutions, Inc., 284 Va. at 399, 732 S.E.2d at 685. From that factual predicate the trial court determined that husband had the necessary tools with which to continue wife's health insurance through Majict and that he chose not to.

Therefore, he assumed the risk that wife would remain without health insurance or covered under an inferior policy, causing her unreimbursed medical expenses to increase.

The health insurance provision is equally clear as to husband's obligation to pay for wife's unreimbursed medical expenses as it provides: "Husband agrees to pay for any and all medical expenses of the Wife that the insurance does not cover." Contrary to husband's assertions, this does not imply a pre-condition that wife submit her bills to insurance before husband becomes liable to pay them. It merely states that husband must pay whatever an insurance company does not. If there is no insurance policy and therefore none of the expenses are reimbursed, then husband, by the plain language of the Agreement, must pay one hundred percent of the expenses.

The plain language of the Agreement also supports the trial court's conclusion that husband's obligation would be unlimited in duration or until wife's death. The Agreement clearly omits a termination date or occurrence for husband's obligation to provide and pay for wife's health insurance and medical expenses. As the parties intentionally omitted a limitation on this obligation, we will not imply one. See Jones, 250 Va. at 68-69, 458 S.E.2d at 769 (citation omitted).

For these reasons, we affirm the trial court's holdings as to husband's assignments of error I through IV related to interpretation of the Agreement.

### B. Damages

We review a damages award to determine whether there were "'sufficient facts'" to support the award. Preferred Sys. Solutions, Inc., 284 Va. at 399, 732 S.E.2d at 685 (quoting Nichols Constr. Corp. v. Virginia Machine Tool Co., 276 Va. 81, 89, 661 S.E.2d 467, 472 (2008)). Damages awards must not be "'contingent, speculative, or uncertain.'" Id. (quoting Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009)).

The trial court admitted into evidence a summary of wife's medical expenses including physician and prescription billings from 2002 through 2012 and other billing exhibits. Husband stipulated that the billing exhibits were "true and accurate copies of billing summaries [wife] received from medical service providers . . . ." Husband also stipulated that copies of CVS pharmacy billings incurred by wife since January 1, 2006, were "true and accurate cop[ies] of [wife's] CVS bills . . . ." Furthermore, wife testified that she sent her unreimbursed bills to husband quarterly in the first year after execution of the Agreement (2002-2003) and annually after that. Wife testified that husband only paid Dr. DiCicco's and a University of Virginia bill out of the numerous medical bills she sent to him. The total amount of medical expenses wife paid that husband failed to reimburse was $19,822.77.

The Agreement obligated husband to provide and pay for wife's health insurance premiums and medical expenses. Wife presented sufficient evidence of those expenses through stipulated billing exhibits and testimony. Therefore, the trial court's damages award was supported by the facts, not speculative, and did flow from husband's breach of the Agreement. Therefore, we affirm the trial court's holding with respect to husband's assignment of error V.

### C. Attorney's Fees

"Whether to award attorney's fees 'is a matter submitted to the sound discretion of the trial court and reviewable on appeal only for an abuse of discretion.'" Irwin, 47 Va. App. at 298, 623 S.E.2d at 444 (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003)). "A prevailing party who seeks to recover attorneys' fees pursuant to a contractual provision . . . has the burden to present a prima facie case that the requested fees are reasonable and necessary." Dewberry & Davis, Inc. v. C3NS, Inc., 284 Va. 485, 495, 732 S.E.2d 239, 243 (2012) (citations omitted).

Section 4.2 of the Agreement provides, in relevant part:

> The parties further agree that in the event either party defaults under the provisions of this agreement, the defaulting party shall be liable for all expenses incurred by the non-defaulting party in connection with the enforcement of this Agreement, including, but not limited to, all legal fees, court costs, and travel expenses.

"Default" is defined as "[t]he omission or failure to perform a legal or contractual duty[.]" Black's Law Dictionary 507 (10th ed. 2014).

Contrary to husband's assertion that "no finding of default was made by the [trial court]" in its order, the trial court expressly found that "[husband] violated the terms of the . . . Agreement by failing to pay for health insurance coverage for [wife] beginning on April 1, 2007 to December 2008." The trial court further found that "[husband] violated the terms of the Agreement by failing to pay [wife]'s medical expenses, other than [Dr. DiCicco's and UVA's bills], from August 30, 2002 to June 15, 2013."

The trial court admitted an affidavit setting forth wife's attorney's fees without objection. In total, wife requested total attorney's fees of $2,460 of which the trial court awarded her $1,200. Based on husband's default of the Agreement, the plain language of § 4.2 of the Agreement, and the competent evidence of reasonable attorney's fees, we affirm the trial court's award of attorney's fees to wife.

### D. Husband's Credit

Wife's sole assignment of error alleges that the trial court erred in crediting husband the amount of $219.95 per month (the monthly premium of wife's temporary internet health insurance policy) for forty-seven and one-half months from July 1, 2009 to June 15, 2013, because the trial court found wife failed to mitigate her health care expenses.

Whether wife failed to mitigate her damages was a factual determination for the trial court to make. See R.K. Chevrolet v. Bank of the Commonwealth, 256 Va. 74, 77, 501 S.E.2d

769, 771 (1998). Therefore, we will not set aside the trial court's judgment on appeal unless it is "plainly wrong or without evidence to support it." See Forbes v. Rapp, 269 Va. 374, 380, 611 S.E.2d 592, 595 (2005).

The Supreme Court of Virginia has long recognized a plaintiff's duty to mitigate her damages. Id. at 380, 611 S.E.2d at 596. "An assertion that an injured party has failed to mitigate damages is an affirmative defense." Id. (citing R.K. Chevrolet, 256 Va. at 77, 501 S.E.2d at 771; Stohlman v. S&B Ltd. P'ship, 249 Va. 251, 256, 454 S.E.2d 923, 926 (1995); Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 266, 427 S.E.2d 363, 369 (1993)). The party asserting the defense, in this case husband, bears the burden of proof on the issue. Id. (citations omitted).

In his answer to wife's petition for a rule to show cause, husband asserted that wife failed to mitigate her damages as an affirmative defense. At trial, the evidence showed that after losing her health insurance through Majict in March 2007, wife remained uninsured until she took out an online health insurance policy in December 2008. Wife admitted that she voluntarily cancelled the online policy in June 2009 for various reasons. At the conclusion of the evidence, the trial court agreed with husband that wife failed to mitigate her health care expenses not covered by insurance and ultimately credited husband the amount of the online policy's monthly premium from the date wife cancelled that coverage through June 2013 when her Medicare coverage began. Based on the record, we do not find that the trial court's determination was plainly wrong or without evidence to support it and thus we affirm its judgment.

### III. Conclusion

For the foregoing reasons, we hold that the trial court did not err in its interpretation of the Agreement nor its finding that husband breached his obligations under the Agreement, in its

calculation of damages awarded to wife, in awarding attorney's fees to wife, nor in crediting husband as a result of wife's failure to mitigate her damages.

Affirmed.