COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Ortiz and Senior Judge Clements
Argued at Leesburg, Virginia


RUSSELL CLINTON SMITH, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0894-22-4                JUDGE JEAN HARRISON CLEMENTS
                                                            JUNE 27, 2023
ALEXANDRIA DEPARTMENT OF COMMUNITY AND
 HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Devanshi Patel (Patel Law, PLLC, on briefs), for appellant.

Matthew W. Greene, Special Assistant City Attorney (Joanna C.
Anderson; Jill A. Schaub; Luis E. Chinchilla, Guardian ad litem for
the minor children; Greene Law Group PLLC, on brief), for
appellee.


        Russell Clinton Smith, Jr. (father) appeals the circuit court's orders terminating his

parental rights to his two minor children and approving the foster care goal of adoption.  Father

argues that the circuit court erred in admitting the parental capacity assessments and two reports

from the court-appointed special advocate (CASA).  He further challenges the circuit court's

termination of his parental rights under Code § 16.1-283(C)(2).  We find no error and affirm the

circuit court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party.

Father and Deborah Swarray (mother) are the biological parents to R.S. and S.S., the two children who are the subject of this appeal.[2] In January 2020, the Department received a report that mother gave birth to R.S., who was born substance exposed; both he and mother tested positive for cocaine. Mother agreed to enter a 30-day inpatient treatment program. The Department entered into a safety plan with father, who agreed to care for R.S. when he was released from the hospital. The safety plan specified that mother could not have unsupervised contact with R.S.

In early March 2020, after her release from inpatient treatment, mother agreed to submit to a drug screen, and she tested positive for cocaine. The Department also learned that the parents had violated the safety plan when father went to the grocery store and left R.S. alone with mother. On March 9, 2020, the City of Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and placed R.S. in the Department's custody. After entering a preliminary removal order, the JDR court adjudicated R.S. to be abused or neglected and entered a dispositional order, which father appealed.

---

[1] The record in this case was sealed. Nevertheless, the appeal requires unsealing relevant portions of the record to resolve the issues father has raised. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother also appealed the circuit court's orders terminating her parental rights and approving the foster care goal of adoption. *See Swarray v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 0630-22-4 (Va. Ct. App. Jun. 27, 2023).

The circuit court also found that R.S. was abused or neglected but ordered that he be returned to father's custody with a protective order, prohibiting mother from having unsupervised contact with R.S. On September 9, 2020, the Department returned R.S. to father's custody. Four days later, the Department made an unannounced visit to the home. Father was not home. R.S. was with mother and another individual who had not been approved to supervise mother's visits. Due to the violation of the circuit court's orders and the lack of relative placement options, the Department removed R.S. from the home and placed him in foster care. Following the entry of the emergency and preliminary removal orders, the JDR court adjudicated that R.S. was abused or neglected and entered a dispositional order.

Approximately six weeks after R.S. entered foster care, mother gave birth to S.S., who was born premature and substance exposed. Both mother and S.S. tested positive for cocaine. Considering the family's history and the removal of R.S., the JDR court entered emergency and preliminary removal orders for S.S., and the Department placed her with R.S. in the same foster home. The JDR court subsequently adjudicated that S.S. was abused or neglected and entered a dispositional order.

After the children entered foster care, the Department established requirements father had to complete before he could be reunited with R.S. and S.S. Father had to participate in substance abuse and mental health treatment. He also had to submit to random drug screenings.

The Department also referred father for a parental capacity assessment, which he completed in 2021. The evaluator, Dr. Christopher L. Bishop, diagnosed father with "other specified personality disorder, antisocial traits." Dr. Bishop found that father minimized mother's risk to the children and he did not "have an awareness or desire to understand her substance use." Although father had a "desire to be a parent," Dr. Bishop was concerned about father's limitations, including his "level of defensiveness, lack of awareness [or]

acknowledgement of substance use disorders, and his desire for his children's mother to be a primary caregiver while she was actively using substances." Thus, Dr. Bishop opined that father was at a "moderate risk" for future neglect and abuse of the children. Dr. Bishop's recommendations included therapy, anger management, drug and alcohol screening, parenting classes, a parenting coach, and case management services. After the assessment, father met with the Department and Dr. Bishop to discuss the results. Father became "angry," yelled, and "had to be removed from the virtual meeting because he was not able to regulate" or listen to the feedback.

In addition to referring father for a parental capacity assessment, the Department arranged for father to visit with the children, but they never progressed beyond supervised visits. In April 2021, the Department detected alcohol on father's breath during one of his visits. Father admitted drinking alcohol before the visit and "for the past few months." In July 2021, before one of father's visits, the Department required him to participate in a drug screen. Father refused, became "agitated," and left the building.

Meanwhile, the foster parents had arrived with the children for the visitation. Father approached the foster parents and took R.S. without permission. Despite several requests, father refused to return R.S. He cursed at the social worker, but eventually placed R.S. in his car seat. Father then walked away and left the area in his own car. After this incident, the Department suspended father's visitations because of its concern about his behavior and demeanor.[3]

The Department remained concerned about father's anger because of mother's reports of physical and verbal abuse between them. In fact, she reported that once, father had hit her in the head with a hammer. Mother and father stopped living together after the children entered foster care.

---

[3] Father's visits resumed in October 2021.

Following the suspension of his visitation, father admitted himself into inpatient substance abuse treatment. After he completed the inpatient treatment, he had intensive outpatient therapy. Despite treatment, father relapsed and tested positive for cocaine. As a result of father's relapse and failure to comply with the services, the JDR court approved the foster care goal of adoption and terminated father's parental rights. Father appealed to the circuit court.

On March 21, 2022, the parties appeared before the circuit court. At the beginning of the hearing, the Department moved to introduce into evidence two CASA reports and the parental capacity assessments. Father objected on the grounds of "hearsay, lack of foundation and authentication." The circuit court overruled father's objections to the CASA reports because Code §§ 9.1-153 and 16.1-274 provided for their admission. With respect to the parental capacity assessments, father conceded that Code § 16.1-245.1 addressed the admissibility of medical records in JDR courts but argued the statute did not apply to circuit courts. The circuit court overruled father's objections to the parental capacity assessments, finding that it had the same powers as the JDR court for matters on appeal under Code § 16.1-296(I).

The Department then explained its "four areas of concern" with father's ability to care for the children, namely "ongoing mental health and substance abuse issues," "housing stability issues," the "lack of awareness and insight into what brought both children into [foster] care," and the "history of domestic violence between the two parents." The nature and extent of the parents' relationship was "unclear." Father previously had indicated that they were still together, but he testified that they no longer had "any relationship." Mother said that she had "no relationship" with him. At the time of the circuit court hearing, father was living with his

grandparents in Maryland.[4]  He did not plan to stay there though and thought he would move "soon."  Thus, the Department considered his housing situation "unstable."

With respect to his substance abuse treatment, father was in the "continuing care" phase. Although he had been participating in individual therapy and substance abuse treatment classes, the Department was concerned that he still lacked "insight" into the impact of his substance abuse and anger on the children.  Father repeatedly told the Department that the children needed to be with mother and refused to acknowledge that mother's substance abuse was "an issue."  He did not appear to understand how mother's drug use could "impact the care and safety of the children."  Given father's lack of awareness, the Department sought adoption for the children.

The Department presented evidence that R.S. and S.S. had been placed in the same foster home and were doing well.  Both were current with their vaccinations and attended day care together.

After the Department presented its evidence, Dr. Amel Logan, a psychologist, testified that he and father had been engaging in weekly mental health counseling since July 2021, focusing on anger management.  Although father's coping skills had improved, Dr. Logan opined that father still needed counseling.

Father admitted that he was "wrong" with his thinking that the children could live with mother because she had not resolved her substance abuse issues.  Father testified that the Department had "misunderstood" his position because he simply wanted the children "with their biological family," whether that was with him or mother.  He loved the children, was willing to care for them, and would abide by any court order, including prohibiting unsupervised contact with mother.

---

[4] Father told the Department that the children could not live with him at his grandparents' house because his grandparents were elderly and did not "have space" for them; however, at the hearing, he testified that the children could live there.

After hearing all the evidence and arguments, the circuit court found that it was in the children's best interests to terminate father's parental rights under Code § 16.1-283(C)(2) and approve the foster care goal of adoption. Father appeals.

ANALYSIS

I. Admissibility of Evidence

Father argues that the circuit court erred by admitting the two CASA reports and the parental capacity assessments. "'[T]he admissibility of evidence "is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion."'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (second alteration in original) (quoting *Surles v. Mayer*, 48 Va. App. 146, 177 (2006)).

Father first asserts that the circuit court erred in admitting the two CASA reports because "there is no statutory authority for admission." Father objected to the CASA reports, arguing "hearsay, lack of foundation and authentication." The Department responded that the CASA reports were admissible under Code §§ 9.1-153 and 16.1-274.[5] The circuit court overruled father's objection, finding that the CASA reports were "admissible by statute." Father did not address the statutory authority in his arguments to the circuit court, so we will not consider them for the first time on appeal.[6] "The Court of Appeals will not consider an argument on appeal

---

[5] Code § 9.1-153(A)(2) provides for the submission to the court of a "written report" of an advocate's investigation. The statute further requires the CASA report to be "in compliance with the provisions of § 16.1-274," which addresses the filing of the report with the clerk of the court. *Id.*

[6] For the first time in his reply brief, and at oral argument, father asked the Court to consider his arguments under the ends of justice exception to Rule 5A:18. Arguments not timely raised are deemed waived. Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); *see also Palmer v. Atlantic Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that argument raised for the first time in a reply brief was waived), and *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief

which was not presented to the trial court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)); *see* Rule 5A:18.

Father also challenges the admissibility of the parental capacity assessments. Father contends, as he did below, that Code § 16.1-245.1, which authorizes the admission of medical evidence in abuse and neglect cases in juvenile and domestic relations district courts, does not extend to circuit courts. Therefore, he argues that the circuit court erred in admitting the parental capacity assessments.

Assuming without deciding that the circuit court erred in admitting the parental capacity assessments, the error was harmless. An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." *Carter v. Commonwealth*, 293 Va. 537, 544 (2017) (quoting *Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Moore v. Joe*, 76 Va. App. 509, 516-17 (2023) (quoting Code § 8.01-678). "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Galiotos v. Galiotos*, 300 Va. 1, 15 (2021) (quoting *Forbes v. Rapp*, 269 Va. 374, 382 (2005)).

The Department presented ample evidence supporting the termination of father's parental rights irrespective of the admission of the parental capacity assessments. In rendering its judgment, the circuit court focused on the length of time that the children had been in foster care

---

or at oral argument). By not raising the ends of justice exception until filing his reply brief, father deprived the Department of any "meaningful opportunity to address" his arguments. *Jeter*, 44 Va. App. at 740. Accordingly, this Court holds that father's arguments regarding the statutory authority are waived. Rule 5A:18; *Palmer*, 293 Va. at 580.

and the parents' inability to resume custody. The circuit court terminated father's parental rights under Code § 16.1-283(C)(2). The record fully supports that father had not remedied the conditions that led to or required the continuation of the children's placement in foster care. Thus, any potential error in admitting the parental capacity assessments was harmless.

## II. Termination of Parental Rights

Father challenges the circuit court's orders terminating his parental rights and approving the foster care goal of adoption.[7] "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo*, 68 Va. App. at 558 (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred in finding that: (1) the Department offered reasonable services to him, (2) he substantially remedied the conditions that led to or required the continuation of the children's foster care placement, and (3) the termination of his parental rights

---

[7] The Department argues that father did not preserve his assignments of error because he did not move to strike the evidence. We disagree. "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for [her] objection in a motion to strike the evidence or in closing argument.'" *Moncrief v. Div. of Child Support Enf't ex rel. Joyner*, 60 Va. App. 721, 729 (2012) (quoting *Lee v. Lee*, 12 Va. App. 512, 515 (1991)). Furthermore, if "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal." *Canales v. Torres Orellana*, 67 Va. App. 759, 771 (2017) (en banc) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). Father preserved his arguments in his closing arguments, and the circuit court was well aware of father's position challenging the termination of his parental rights.

was in the children's best interests.  The circuit court terminated father's parental rights under

Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that

created the original danger to the child, but on the demonstrated failure of the parent to make

reasonable changes."  *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*,

46 Va. App. 257, 271 (2005)).

"'Reasonable and appropriate' efforts can only be judged with reference to the

circumstances of a particular case.  Thus, a court must determine what constitutes reasonable and

appropriate efforts given the facts before the court."  *Harrison v. Tazewell Cnty. Dep't of Soc.*

*Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14

Va. App. 333, 338 (1992)).  The Department referred father to substance abuse treatment,

counseling, a parental capacity assessment, "fatherhood engagement services," and parent

coaching.  Considering the totality of the circumstances, the circuit court did not err in finding

that the Department had made reasonable efforts to reunite the children with father.

Despite the Department's services, father failed to substantially remedy the conditions

that led to the children entering and remaining in foster care.  Both children entered foster care

because they were born substance exposed; each tested positive for cocaine.  The Department

removed R.S. from father's custody twice because he violated a safety plan and a protective

order by allowing mother to have unsupervised contact with R.S.  Throughout the pending

matter, father failed to recognize the impact that substance abuse had on the children and

repeatedly told the Department that the children should be with mother, despite knowing that she had used illegal substances. In April 2021, father appeared for a visitation with alcohol on his breath. Just a few months after he completed inpatient and intensive outpatient services, father admittedly had had a "relapse." At trial, father claimed that he was in "continuing care" and participating in Alcoholics Anonymous meetings.

The Department also expressed "concerns about [father's] ability to regulate his emotions when in a stressful situation." There were allegations of domestic violence between the parents. In July 2021, father became agitated before a visit and took R.S. from the foster parents' car without permission. Initially, he ignored several requests to return R.S.; however, eventually, father placed R.S. back into the car and left the area. Father similarly became angry when the Department and Dr. Bishop tried to review the recommendations from the parental capacity evaluation with him; they had to end the meeting early because father was uncontrollably angry. Father's therapist testified that they were addressing anger management in counseling, but father still needed therapy.

Finally, father's housing situation remained uncertain. He was living with his grandparents in Maryland and previously had told the Department that their house was not suitable for the children, although he denied this at trial. Regardless, father intended to move, so his housing situation was unstable.

The Department had provided father with numerous services; however, father had not demonstrated an understanding of "his role in the abuse/neglect of [R.S. and S.S.], insight into his alcohol abuse and substance abuse history, ability to regulate his emotions, [and] ability to recognize the impact of his impulsivity." Indeed, despite the services he had received, he had not progressed from unsupervised visits with the children. At the time of the circuit court hearing, the children had been in foster care for approximately 18 months—most of their lives—

and father still was not in a position to assume custody of them. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Thus, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

### III. Clerical Error

When the circuit court entered the order terminating father's parental rights to R.S., it failed to indicate whether R.S. was an Indian child. For the first time on appeal, father argues that the circuit court erred by "failing to make the appropriate jurisdictional finding under the Indian Child Welfare Act of 1978." The Department concedes that the circuit court failed to check the appropriate box in the termination order but argues that the oversight was a clerical error. We agree. The record reflects that the circuit court checked the appropriate box in the permanency planning order, finding that R.S. was not an Indian child. Such clerical mistakes may be corrected to make the record speak the truth. *See* Code § 8.01-428(B). "The only relevant questions under the provisions of Code § 8.01-428(B) are whether the nature of the correction falls in the category of '[c]lerical mistakes' or 'errors' in a judgment or 'other parts of the record' and whether such mistakes or errors arose 'from oversight or from an inadvertent omission.'" *Belew v. Commonwealth*, 284 Va. 173, 180 (2012). Here, the circuit court's failure to check a box on the termination order is a clerical error arising from an "oversight." *Id.* Thus, we remand the matter to the circuit court to correct the clerical error in the order terminating father's parental rights to R.S. by indicating that R.S. is not an Indian child. Code § 8.01-428(B).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed, but we remand the

matter to the circuit court to correct the clerical error in the order terminating father's parental

rights to R.S.  *See* Code § 8.01-428(B).

*Affirmed and remanded.*